United States Court of Appeals,

Fifth Circuit.

No. 95-21052

Summary Calendar.

Earl WEBB;  Barbara Webb, Plaintiffs-Appellants,

v.

INVESTACORP, INC., Defendant-Appellee.

July 26, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, DAVIS and BENAVIDES, Circuit Judges.

PER CURIAM:

Earl and Barbara Webb appeal the district court's order denying their motion to remand this action to state court and granting Investacorp's motion to compel arbitration.  We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

Investacorp, Inc., a Florida corporation, is a securities broker-dealer.  On September 10, 1991, Earl Webb, then a citizen of Texas, executed a "Manager's Agreement" with Investacorp whereby he became a contract representative for Investacorp in Houston, Texas. This agreement was later superseded by a "Principal Agreement," which Earl Webb executed on October 28, 1992.  Barbara Webb became a contract representative for Investacorp by executing a similar "Principal Agreement" with Investacorp on October 1, 1993.

Each of the Principal Agreements contained an indemnification clause that required the contractor to indemnify Investacorp for any debit in an account of his clients.  Each agreement also

contained a "Governing Law and Venue" clause, which stated:

> In all respects this Agreement shall be governed by and construed in accordance with the laws of the State of Florida. It is hereby agreed by the parties that all proceedings will be subject to arbitration before the NASD and will be instituted and take place in the county in which Company maintains its executive offices or as close thereof as is possible. Further, Contractor shall be responsible to Company for the costs of collection, including attorney's fees, forum fees and other costs arising out of the enforcement and/or defense of this Agreement.

In December 1994, a dispute arose between the Webbs and Investacorp regarding an account of one of the Webbs' customers. As a result of this dispute, the Webbs resigned from Investacorp. Later, the customer failed to meet a margin call, resulting in a debit balance of approximately $75,000 in the customer's account. Investacorp then filed a claim with the National Association of Securities Dealer's, Inc. ("NASD"), seeking arbitration of its claim that the Webbs are contractually obligated to indemnify it for the loss on the customer's account.

The Webbs filed the present action in state district court in Harris County, Texas. Specifically, the Webbs sought a declaratory judgment that the contracts between themselves and Investacorp did not require them to arbitrate disputes with Investacorp and an injunction prohibiting Investacorp from pursuing claims in arbitration proceedings. Investacorp removed this case to federal district court based on diversity of citizenship.

The Webbs filed a motion to remand the case to state court, asserting that the amount in controversy did not exceed $50,000, as required by 28 U.S.C. § 1332(a), because a declaratory judgment would not result in any direct pecuniary gain or loss to

2

Investacorp. In addition, Investacorp filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, to stay the proceedings and compel arbitration. Specifically, Investacorp argued that NASD had exclusive jurisdiction of its dispute with the Webbs. Investacorp alternatively claimed that § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, required the district court to stay the instant case and to enter an order compelling arbitration.

The district court denied the Webbs' motion to remand, looking to Investacorp's $75,000 claim in the underlying arbitration to determine the amount in controversy. The court also denied Investacorp's motion to dismiss and to stay proceedings, but granted Investacorp's motion to compel arbitration. The court reasoned that the "Governing Law and Venue" clauses in the agreements between Investacorp and the Webbs were valid and enforceable, and therefore entered an order compelling arbitration of Investacorp's claim. The court noted that the order compelling arbitration "effectively disposes of the case." The Webbs timely appealed.

II. DISCUSSION

On appeal, the Webbs argue that the district court erred in denying their motion to remand, asserting that Investacorp failed to establish that the amount in controversy in this action meets the requirement for diversity jurisdiction. The Webbs also contend that the court erred in determining that the agreements between themselves and Investacorp require them to arbitrate Investacorp's

3

claim.  We address each of these arguments in turn.

A. Amount in Controversy

Because removal is an issue of statutory construction, we review a district court's determination of the propriety of removal de novo.  *Garrett v. Commonwealth Mortgage Corp. of Am.,* 938 F.2d 591, 593 (5th Cir.1991).

The Webbs argue that the district court erred in looking to the amount of Investacorp's claim in arbitration to determine the amount in controversy in this case.  First, they assert that the amount in controversy in a declaratory judgment action is the value of the right that the plaintiffs seek to protect, and that a court must determine this value from the plaintiffs' perspective.  They then contend that the right at issue in this case is their right to have their dispute with Investacorp adjudicated in a court rather than an arbitration proceeding—a right that they claim cannot be valued in monetary terms.  By contrast, they argue that Investacorp's right to indemnity is not an issue in this case. Finally, they attempt to distinguish the cases relied upon by the district court on the ground that, in those cases, the plaintiffs sought to compel arbitration under the Federal Arbitration Act or to control the conduct of a pending arbitration, whereas they are only requesting a declaration under state law of their obligation to arbitrate prior to arbitrating or while arbitrating under protest.

"[T]he amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the

extent of the injury to be prevented." *Leininger v. Leininger,* 705 F.2d 727 (5th Cir.1983).  This court has not addressed the issue of the value of the right not to submit a dispute to arbitration; however, as the district court noted, the Second and Third Circuits have addressed an analogous issue.  In *Davenport v. Procter & Gamble Mfg. Co.,* 241 F.2d 511 (2d Cir.1957), the plaintiff brought a state court action to compel arbitration according to the terms of a collective bargaining agreement.  The defendant removed the case to federal court based on diversity jurisdiction, whereupon the plaintiff moved for remand on the ground that the jurisdictional amount was not satisfied because a demand to compel arbitration "has no ascertainable money value."  *Id.* at 512-13. The court denied the motion and the plaintiff appealed.  *Id.* at 512.  On appeal, the Second Circuit held that:

> In considering the jurisdictional amount requirement the court should look through to the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award.

*Id.* at 514.  Because the petition for removal indicated that the amount of the arbitration award sought exceeded the statutory requirement for diversity jurisdiction, the court affirmed the denial of the motion to remand.  *Id.*  The Third Circuit has subsequently followed *Davenport* in determining the amount in controversy in actions to compel arbitration. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 877 (3d Cir.1995);  *Manze v. State Farm Ins. Co.,* 817 F.2d 1062, 1068 (3d Cir.1987).

At least one court has found that the logic of *Davenport* and

5

its progeny applies to a suit seeking to *enjoin* an arbitration provision. *Hambell v. Alphagraphics Franchising Inc.,* 779 F.Supp. 910, 912 (E.D.Mich.1991). In *Hambell,* a dispute arose between a franchisor and two of its franchisees, prompting the franchisor to file a demand for arbitration in Arizona, as required by the franchise agreement. *Id.* at 911. The franchisees responded by filing a suit in Michigan state court in which they sought to enjoin enforcement of the arbitration location provision in the franchise agreement. *Id.* The franchisor removed the case to federal district court and the franchisees moved for remand on the ground that "the purely equitable nature of the relief sought by their state court complaint renders the action inherently incapable of meeting the amount in controversy requirement." *Id.* at 911-12. The district court disagreed, reasoning that an action to enjoin an arbitration provision was analogous to a motion to compel arbitration, and therefore, *Davenport* and its progeny suggested that the court should look to the amount of the claim in the underlying arbitration to determine the amount in controversy. *Id.* at 912. Because the amount of the underlying claim exceeded $50,000, the court denied the motion to remand. *Id.*

We are persuaded that *Davenport* and its progeny state the correct rule in holding that the amount in controversy in a motion to compel arbitration is the amount of the potential award in the underlying arbitration proceeding. Moreover, we find that the *Hambell* court's extension of this rule by analogy is well-reasoned and instructive. Similar to the plaintiffs in *Hambell,* the Webbs

6

sought to "enjoin[ ] pending or future arbitration" in their original state court petition. The Webbs also sought a judgment "declaring that the written documents in question do not require the Webbs to submit to arbitration." These claims are sufficiently analogous to a motion to compel arbitration to justify application of the *Davenport* rule in this case. Therefore, the district court properly looked to the amount of Investacorp's claim in the underlying arbitration to determine the amount in controversy in this action for declaratory relief. Because Investacorp's claim is for more than $50,000, removal on the basis of diversity jurisdiction was allowed and the district court correctly denied the Webbs' motion to remand.[1]

---

[1]Looking to the value of Investacorp's claim in the underlying arbitration does not violate the rule cited by the Webbs that "[t]he value to the *plaintiff* of the right to be enforced or protected determines the amount in controversy." *Alfonso v. Hillsborough County Aviation Auth.,* 308 F.2d 724, 727 (5th Cir.1962) (emphasis added). In this regard, we find analogous support in two of our decisions.

First, in *Stonewall Ins. Co. v. Lopez,* 544 F.2d 198 (5th Cir.1976), an insurer brought a declaratory judgment action against its insured, asserting that there was no coverage for a particular occurrence. The amount of the disputed coverage and the cost of defending the insured exceeded the requisite jurisdictional amount. *Id.* at 199. The insured argued on appeal that the amount in controversy was not satisfied because the court was bound to determine this amount "solely from the viewpoint of the plaintiff [insurer], ignoring the lawsuit's pecuniary impact on the defendant [insured]." *Id.* at 199 n. 2. We held that we did not have to consider this rule because "[t]he difference between winning and losing this lawsuit," to either party, was an amount that exceeded the required jurisdictional amount. *Id.* Similarly, the difference to the Webbs between winning and losing the underlying arbitration will be $75,000, which satisfies the requirement for diversity jurisdiction.

7

B. Order Compelling Arbitration

We review the grant or denial of a motion to compel arbitration de novo. *See Snap-On Tools Corp. v. Mason,* 18 F.3d 1261 (5th Cir.1994); *see also Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 797 (10th Cir.1995).

The Webbs argue that the district court's granting of Investacorp's motion to compel arbitration was erroneous for several reasons. First, the Webbs contend that the district court erroneously applied Florida law to determine the arbitrability of Investacorp's claim because the Florida choice-of-law clauses relied on by the court were not valid and enforceable under Texas law; rather, the Webbs argue that Texas law governs the question of arbitrability. Applying Texas law, the Webbs contend that the arbitration clauses in their agreements with Investacorp are not valid and enforceable because: (1) the clauses are non-negotiated, material terms that Investacorp added to writings that merely formalized the Webbs' earlier oral agreements to work for Investacorp, under which they had already commenced performance; (2) the clauses are unconscionable; and (3) the clauses do not by clear language show the Webbs' clear intent to submit their dispute

---

Second, in *Leininger v. Leininger,* 705 F.2d 727 (5th Cir.1983), an individual brought a state court action against his ex-wife to enjoin her from enforcing an alimony judgment from another forum. The ex-wife removed the action to federal court. *Id.* at 728. Although the ex-wife was the defendant in that action, we looked to the amount of the underlying alimony judgment that she sought to enforce against the plaintiff in determining the amount in controversy. *Id.* at 729. Similarly, we look to the amount of Investacorp's claim in the underlying arbitration proceeding to ascertain the amount in controversy.

8

with Investacorp to arbitration.  Finally, the Webbs argue that the district court erred in summarily disposing of their declaratory judgment action on the pleadings.[2]

Before addressing the Webbs' arguments, we briefly outline the legal framework involved in this appeal.  In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-step inquiry.  The first step is to determine whether the parties agreed to arbitrate the dispute in question.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353-54, 87 L.Ed.2d 444 (1985);  *Folse v. Richard Wolf Medical Instruments Corp.,* 56 F.3d 603, 605 (5th Cir.1995);  *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992).  This determination involves two considerations:    (1) whether there is a valid agreement to arbitrate between the parties;  and (2) whether the dispute in question falls within the scope of that arbitration agreement.  *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir.1994);

---

[2]The Webbs also contend that Investacorp is not entitled to bring a motion to compel arbitration under the Federal Arbitration Act because it has not been "aggrieved" by the Webbs' "failure, neglect, or refusal" to arbitrate under 9 U.S.C. § 4.  The Webbs did not make this argument to the district court in its response to Investacorp's motion.  Further, they did not make this argument in their initial appellate brief, but only raised the issue in their reply brief.  Typically, we will not consider on appeal matters not presented to the trial court. *Quenzer v. United States (In re Quenzer),* 19 F.3d 163, 165 (5th Cir.1993).  Also, "[a]n appellant abandons all issues not raised and argued in its initial brief on appeal." *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.) (declining to address argument discussed only in appellant's reply brief), *cert. denied,* --- U.S. ----, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).  Accordingly, we do not address the Webbs' arguments in this regard.

*PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990). When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* --- U.S. ----, ----, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *see also Perry v. Thomas,* 482 U.S. 483, 492-93 n. 9, 107 S.Ct. 2520, 2526-28 n. 9, 96 L.Ed.2d 426 (1987). In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1253-54, 103 L.Ed.2d 488 (1989). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3355; *see also Folse,* 56 F.3d at 605; *R.M. Perez & Assocs.,* 960 F.2d at 538.[3]

---

[3]In some cases, an additional, threshold inquiry will be whether the parties agreed to arbitrate the issue of arbitrability itself or whether the parties intended for arbitrability to be decided by a court, as in a motion to compel arbitration. *See First Options,* --- U.S. at ---- - ----, 115 S.Ct. at 1923-26 (1995) (discussing question of "who has the primary power to decide arbitrability" in the context of reviewing an arbitration award). While contracting parties may agree to submit the question of arbitrability to an arbitrator, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at ----, 115 S.Ct. at 1924 (citation omitted). Here, the district court found no such "clear and unmistakable" evidence and the parties do not dispute this finding on appeal. Accordingly, we conclude that the parties agree, for purposes of this appeal, that the issue of arbitrability was properly before the district court.

The Webbs' first argument relates to the application of state law to determine whether the parties agreed to arbitrate Investacorp's claim. Specifically, the Webbs urge that Texas law, rather than Florida law, governs the arbitrability of their dispute with Investacorp. We need not resolve this question, however, because even assuming arguendo that Texas law governs the arbitrability question here, we find that the Webbs' contentions on that issue are without merit. *Cf. Phillips v. Goodyear Tire & Rubber Co,* 651 F.2d 1051, 1054 (5th Cir. Unit A 1981) (declining to decide choice-of-law issue where appellee urged application of Texas law, but argued that he would prevail under either Texas or Georgia law, and court concluded that appellee's arguments failed under the laws of both fora).[4]

The Webbs' contentions with respect to the substantive question of whether they agreed to arbitrate Investacorp's claim against them all relate to the validity of the agreements to arbitrate. First, the Webbs cite TEX.BUS. & COM.CODE ANN. § 2.207 (the U.C.C.'s "battle of the forms" provision) as prohibiting a party from adding non-negotiated, material terms to writings that merely formalize an earlier oral agreement with respect to the sale of goods. The Webbs then note that Texas courts will apply standards for sales contracts to service contracts where there is

---

[4]Unlike the appellee in *Phillips,* the Webbs have not argued on appeal that they would prevail regardless of the law applied; they have only argued that they would prevail under Texas law. Accordingly, we need only assume arguendo that Texas law governs the arbitrability question, as the Webbs contend, and do not consider the issues under Florida law.

no reason to apply a different standard. Even if we assume that Texas courts would apply § 2.207 to the contracts at issue here, however, that statute offers the Webbs no relief. Section 2.207 provides that additional terms are construed as proposals for addition to the contract. TEX.BUS. & COM.CODE ANN. § 2.207(b). The Webbs apparently accepted the proposed arbitration clauses because they signed the Principal Agreements, they maintained a working relationship with Investacorp under those Agreements, and they never objected to the arbitration clauses. Furthermore, the Principal Agreements on their face operate as more than "mere confirmations" that add terms to any prior oral agreements between the Webbs and Investacorp—specifically, they provided that "[a]ll prior agreements, whether oral or written, are hereby revoked and superseded." Therefore, even if the prior oral agreements between the Webbs and Investacorp did not contemplate the arbitration of disputes, those oral agreements were subsequently revoked.

The Webbs also contend that the arbitration clauses are unconscionable under Texas law. In this regard, the Webbs argue that Investacorp unilaterally added the arbitration clauses to their prior oral agreements, that the clauses are in fine-print in the Principal Agreements, and that the arbitration clauses are one-sided, forcing the Webbs to relinquish their right of access to the courts, to litigate in a foreign venue, and to pay Investacorp's litigation costs. We find these arguments to be without merit. We have already dismissed the Webbs' contention that Investacorp unilaterally added the arbitration clauses to

12

prior oral agreements. Further, the size of the print in the Principal Agreements is uniform—the arbitration clauses are in print no smaller than any other provision. Finally, the arbitration clauses themselves are not one-sided in the sense that they cause the Webbs to relinquish their access to the courts because, by the same provisions, Investacorp has relinquished the same right. While the venue and cost provisions may be disfavorable to the Webbs, "the fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily." *Wade v. Austin,* 524 S.W.2d 79, 86 (Tex.App.—Texarkana 1975, no writ). Nothing in the record suggests that the Webbs did not understand the import of the arbitration clauses or that the Webbs signed the Principal Agreements under circumstances of duress or fraud. Accordingly, the district court correctly concluded that the arbitration clauses were not unconscionable.

The Webbs' final argument with respect to the validity of the arbitration clauses is that the clauses fail the requirement under Texas law that an agreement to arbitrate must be clear:

> [N]o party is under a duty to arbitrate unless by clear language he has previously agreed to do so; and it must clearly appear that the intention of the parties was to submit their disputes to an arbitration panel and to be bound by the panel's decision.

*Massey v. Galvan,* 822 S.W.2d 309, 316 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Specifically, the Webbs contend that the language of the arbitration clause—"[i]t is hereby agreed by the parties that all proceedings will be subject to arbitration

13

before the NASD"—is unclear for three reasons: (1) the phrase "subject to" does not create an obligation; (2) the clauses fail to indicate that "disputes, claims or controversies" will be arbitrated; (3) the clauses do not state that disputes "will be decided" by arbitration. We disagree. While the language of the arbitration clauses could have been drafted with more precision, we think that the breadth of the clauses makes it sufficiently clear that the parties intended to submit their disputes to the NASD arbitration process. In this regard, we note that ambiguities in an arbitration clause are to be resolved in favor of arbitration. *Volt Info. Sciences,* 489 U.S. at 476, 109 S.Ct. at 1254. Further, the presumption of arbitrability is "particularly applicable where the clause is ... broad." *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). Therefore, the district court correctly determined that the arbitration clause was unambiguous.

The Webbs have not argued that Investacorp's specific claim is outside the scope of this arbitration clause. Also, the Webbs have not asserted that there is any external legal constraint that renders Investacorp's specific claim unarbitrable. Accordingly, for the foregoing reasons, we affirm the district court's order granting Investacorp's motion to compel arbitration.

Finally, the Webbs contend that the district court improperly dismissed their declaratory judgment action on the pleadings. In this regard, the Webbs argue that the court was bound to accept the facts pleaded by the Webbs as true and that the court disregarded

fact issues raised by the pleadings. These arguments, however, misconstrue the effect of the court's order. The court granted Investacorp's motion to compel arbitration and then noted that this order "effectively dispose[d] of" the Webbs' case. "While the availability of another remedy does not deprive the court of jurisdiction to grant declaratory relief, the court has sole discretion to determine whether to grant such relief." *Uvalde County v. Barrier,* 710 S.W.2d 740, 745 (Tex.App.—San Antonio 1986, no writ). Further, "[c]ourts will not grant a futile or useless declaratory judgment." *Armentrout v. Texas Dep't of Water Resources,* 675 S.W.2d 243, 245 (Tex.App.—Austin 1984, no writ). The order granting Investacorp's motion to compel arbitration disposed of the same issues that the Webbs raised in their declaratory judgment action. Therefore, the district court did not abuse its discretion in refusing to grant the Webbs' requested declaratory relief.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

15