IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-10815
_____

STINNETT ENTERPRISES, INC.,

Plaintiff-Appellee,

versus

DRAGON TEXTILE MILLS, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas, Lubbock
(5:98-CV-32-C)

_____

August 13, 1999

Before JOLLY and SMITH, Circuit Judges, and STAGG,[*] District Judge.

E. GRADY JOLLY, Circuit Judge:[**]

Stinnett Enterprises, Inc. ("Stinnett") and Dragon Textile Mills, Inc. ("Dragon") entered into a contract under which Stinnett would ship cotton to Dragon. The parties failed to comply with the agreement after the first shipment and Dragon sought to arbitrate the dispute pursuant to a clause in the contract compelling arbitration. Stinnett filed a complaint seeking declaratory and injunctive relief barring Dragon from arbitrating the dispute and Dragon filed a motion to compel arbitration. The district court held that the arbitration clause was limited to disputes arising

_____

[*]District Judge of the Western District of Louisiana, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

out of the force majeure provision of the contract and granted a preliminary injunction in Stinnett's favor. Because we find that the arbitration clause does not unambiguously limit arbitration to force majeure disputes, we reverse.

Stinnett through its agent, P.T. Worldwide, Inc. ("P.T."), entered into a contract with Dragon under which Stinnett would provide 800 metric tons of cotton to Dragon in three separate shipments. The contract, which was prepared by Stinnett, includes the following sentence on the front of the one-page contract where the specific terms of the agreement appear:

> <u>Friendly or Liverpool</u> arbitration <u>Liverpool rules</u> as mentioned under No. 8 of our general conditions.

The underlined words are typed in. The other words are a part of the form contract that embodies the specific terms of the agreement. The general conditions, which are also part of the form, were printed on the back of the one-page contract. No. 8 of the general conditions reads as follows:

> 8. Force Majeure: Sellers are not liable for temporary delays caused by conditions beyond their control. Buyers agree to extend letters of credit upon request.

> Should fulfillment of this contract be rendered impossible in any part and/or in any respect by reason of acts of God, including but not limited to fires, floods, earthquakes or accidents, acts of war, blockades, embargo, strikes, riots, rebellions or other restraints of rulers or organized acts, or any other emergency beyond the control of the new buyer and seller, both parties shall decide by mutual agreement how the contract shall be fulfilled, or canceled at the market difference. In the event the parties are unable to arrive at a mutually satisfactory agreement, then the matter shall be referred to Arbitration.

Stinnett apparently believed that the contract language limits arbitration to disputes arising out the force majeure clause. Dragon, on the other hand, apparently regarded the sentence on the front of the contract as providing for arbitration of all disputes arising out of the contract.

After delivering its first shipment approximately three months later than it should, Stinnett refused to make any further deliveries, claiming that Dragon had breached the contract. Dragon sought to arbitrate the dispute in England, and Stinnett responded by seeking injunctive relief in Texas state court. The case was removed to federal court and Stinnett sought a preliminary injunction. The district court granted relief after holding an evidentiary hearing. Dragon filed a motion to stay or dismiss the proceeding pending arbitration or, in the alternative, to compel arbitration ("motion to compel arbitration"). The district court denied the motion and Dragon filed a notice of interlocutory appeal. The district court <u>sua sponte</u> stayed the proceedings below pending appeal.

We review the denial of a motion to compel arbitration de novo. <u>Webb v. Investacorp, Inc.</u>, 89 F.3d 252, 257 (5th Cir. 1996). We review the district court's determination of whether a contract is ambiguous de novo, but, to the extent that determination rests on extrinsic evidence of usage of trade, the issue may involve a question of fact requiring review under a clearly erroneous

3

standard.  <u>Bloom v. Hearst Entertainment, Inc.</u>, 33 F.3d 518, 522-23 (5th Cir. 1994).

Dragon contends that the contract compels arbitration of all disputes.  Dragon further contends that, even if the more restrictive reading of the contract urged by Stinnett is adopted, the dispute at issue here should still be subject to arbitration. Because we agree with Dragon that the arbitration clause compels arbitration of all claims arising out of the contract, we do not address Dragon's second argument.

Dragon argues that the contract provided for arbitration with respect to all disputes arising out of the contract.  According to Dragon, the term "Liverpool Arbitration" as used in the industry implies that disputes in the contract will be resolved through arbitration.  Stinnett argues that because the complete clause reads "Friendly or Liverpool arbitration Liverpool rules as mentioned under No. 8 of our general conditions," the contract limits arbitration to disputes related to general provision No. 8-- the force majeure provision.  Dragon responds that the term "as mentioned" means citing, noting or referring to No. 8.  It does not mean, "as restricted to the circumstances described in No. 8" or "as limited by No. 8."  At best, Dragon argues, the term is ambiguous, in which case the term should be construed in Dragon's favor.

We find that Dragon has the better argument. Federal policy favors arbitration and "ambiguities as to the scope of an

4

arbitration clause itself must be resolved in favor of arbitration." Volt Information Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 476 (1989); see also Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983) (issues of contract language construction should be resolved in the favor of arbitration). Second, because Stinnett drafted the contract, the language of the agreement is subject to "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62-63 (1995).

Although the parties could have intended the arbitration clause on the front of the contract to be limited to the force majeure provision, the placement of the clause (as a separate clause from the force majeure provision) and the use of the term "as mentioned" make the clause at least ambiguous. We therefore must accept Dragon's reading of the clause.

We admit that this reading is troublesome in that, if the arbitration clause were meant to be applied to the entire contract, there would appear to be no need for the additional verbiage "as mentioned under No. 8 of our general conditions." It is horn-book law that the terms of a contract should not be read in such a way as to render them devoid of meaning.[1] In this case, however, even

---

[1]Section 203 of the Restatement 2d provides in part that: In the interpretation of a promise or agreement or a term thereof, the following standards of preference are

if the words were utterly meaningless, our reading of the words "as mentioned" does not lead to a meaningless <u>term</u> but instead renders a phrase contained in one of the contract terms meaningless. However, it is not implausible that the words mean that Liverpool rules apply to arbitration under paragraph 8, as well as to the agreement reflected in the specific terms that appear on the front of the contract.

Finally, we should point out that, if we interpreted the clause as being limited to general provision No. 8, we would effectively be rendering the term "friendly" redundant or meaningless inasmuch as provision No. 8 states that the parties may by mutual agreement resolve any issues between them arising under that provision.

In short, we are confronted with an ambiguous clause. We therefore conclude that the arbitration clause should be read in favor of requiring arbitration of all disputes arising out of the contract. On that basis, we reverse the district court's ruling.

For the foregoing reasons, the rulings and orders of the district court are REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

generally applicable:
(a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.