MEMORANDUM OPINION




No. 04-02-00901-CV



In re Heydar "Shaun" KHALEDI



Original Mandamus Proceeding



Arising from the 406th Judicial District Court, Webb County, Texas


Trial Court No. 2002-CVF-000091-D4


Honorable Andres Reyes, Judge Presiding



PER CURIAM


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: February 12, 2003


PETITION FOR WRIT OF MANDAMUS DENIED

 Relator filed a petition for writ of mandamus complaining the trial court erred in denying his
motion to compel arbitration on the grounds he waived his right to arbitration. In response, the real
parties in interest, Abdul Rasoul Khaledi (" Ross") and Abbas Khaledi ("Shahram") argue that
relator's petition should be denied because among other reasons: (1) this court does not have
jurisdiction to consider this mandamus because relator failed to establish that the Federal Arbitration
Act ("FAA") is applicable; (2) the scope of the arbitration provision does not reach the underlying
dispute; and (3) relator waived his right to arbitration. We hold that the FAA governs the arbitration
provision, and we have jurisdiction to determine relator's petition. However, because the scope of
the arbitration provision at issue did not reach the underlying dispute, we deny relator's request for
relief. In addition, we do not reach the issue of waiver because the scope of the arbitration clause is
a threshold issue and defeats relator's motion to compel.


Background

 The underlying action arises from a business dispute among the Khaledi brothers. The
Khaledi brothers began their business relationship in the 1980s. By the 1990s, the brothers had
created seventeen companies and partnerships ("the Khaledi Companies") involving electronics,
money exchange, and construction. However, in 1999, the brothers began to experience personal and
professional problems. As a result, Ross and Shahram decided to buy out relator's interests in the
Khaledi Companies.

 At a Spring of 2000 meeting, the brothers agreed on a price and the terms for purchasing
relator's business interests. However, Ross and Shahram also agreed to retain relator as a consultant.
On May 11, 2000, the brothers signed a letter agreement detailing the sale and consulting agreement
terms. On June 2, 2000, relator sold his interest in the Khaledi Companies for approximately five
million dollars, which was to be financed over three years. On that same day, the brothers also signed
a "Consulting Agreement," pursuant to which relator was to act as a consultant to H.K. Global. (1)
Under the Consulting Agreement, relator was to be compensated approximately one million dollars
per year for the next six years. (2)

 Within weeks of signing the Consulting Agreement, Ross and Shahram discovered that relator
had allegedly used his contacts in the construction industry to set up a construction firm, and he had
engaged in the sale of electronics. Ross and Shahram believed that relator's behavior violated the
Consulting Agreement. Accordingly, on January 24, 2002, Ross and Shahram sued relator based on
the Consulting Agreement. 

 On July 11, 2002, relator allegedly learned for the first time that the partnership agreement
("1999 Agreement"), which controlled H.K. Global, contained a provision mandating arbitration. (3)
Therefore, on August 27, 2002, eight months after the suit was filed, relator filed a motion to compel
arbitration in accordance with the 1999 Agreement. On November 26, 2002, the trial court denied
relator's motion to compel. On November 27th, the trial court issued an amended order specifying
that relator's motion to compel was denied on the grounds that relator had waived his right to
arbitration. This mandamus proceeding ensued.

Discussion

 In this mandamus proceeding, we will address 1) whether claims arising out of the 1999
Agreement are arbitrable under Federal Arbitration Act, 9 U.S.C. §§ et. seq. (1999) ("FAA") or the
Texas General Arbitration Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001 et. seq. (Vernon
1997 and Supp. 2002) ("TAA"); 2) whether the claims asserted fall within the scope of the 1999
Agreement; and 3) whether the relator waived his right to compel arbitration. 


Mandamus Jurisdiction

 To determine whether there is jurisdiction, we must resolve whether the 1999 Agreement is
governed by the FAA or the TAA. Under the FAA, the denial of a motion to compel arbitration can
be reviewed by mandamus because there is no adequate remedy by appeal. Freis v. Canales, 877
S.W.2d 283, 284 (Tex. 1994). However, under the TAA, a trial court's order denying arbitration is
reviewable only by interlocutory appeal. Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 497 (Tex.
App.--San Antonio 2000, orig. proceeding). Here, relator moved to compel arbitration under the
FAA. Section 2 of the FAA provides in pertinent part that: 

 [a] written provision in any maritime transaction or a contract evidencing a
transaction involving commerce to settle by arbitration a controversy thereafter arising
out of such contract or transaction, ... shall be valid, irrevocable, and enforceable,
save upon such grounds as exist at law or in equity for the revocation of any contract.


9 U.S.C. § 2 (1999). The FAA applies to all suits in state and federal court when the dispute
concerns a "contract evidencing a transaction involving commerce." Southland Corp. v. Keating, 465
U.S. 1, 14-16 (1984); Perry v. Thomas, 482 U.S. 483, 489 (1987). "Commerce" under the FAA is
broadly construed and whether an agreement is controlled by the FAA is determined by whether the
contract relates to interstate commerce. In re Tenet Healthcare, Ltd., 84 S.W.3d 760, 765 (Tex.
App.--Houston [1st Dist.] 2002, orig. proceeding). A party seeking to compel arbitration under the
FAA must establish his right to do so. Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex.
1996, orig. proceeding). 

 To establish his right to arbitrate under the FAA, relator first relies on the terms of the 1999
Agreement. Specifically, relator directs the court to the following paragraph of that agreement: "[t]he
business of the Partnership shall be to own, manage, operate, the whole sale [sic] and retail sale of
electronic merchandise and other tangible personal property in Mexico, the United States and other
foreign countries." In addition, relator points the court to deposition testimony from a business
employee who states that H.K. Global's primary business is to sell consumer electronics in both
Mexican and domestic markets. Because the term "commerce" is construed broadly, and relator has
shown that the purpose of H.K. Global is to sell electronics in the United States and Mexico, we
conclude that he has met his burden to establish the applicability of the FAA. 

 Scope of Arbitration Provision


 Next Ross and Shahram dispute whether the arbitration provision relied upon by relator
reaches the claims raised by their lawsuit. In adjudicating a motion to compel arbitration under the
FAA, we must first assess whether the parties agreed to arbitrate the dispute in question. Webb v.
Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996). This determination involves two
considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2)
whether the dispute in question falls within the scope of that arbitration agreement. Id. at 258. When
deciding whether the parties agreed to arbitrate the dispute in question, "courts generally ... should
apply ordinary state-law principles that govern the formation of contracts." Id. To determine
whether the claim falls within an arbitration clause's scope, a court focuses on the facts alleged, not
on the causes of action asserted. Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205 (Tex.
App.--Houston [1st Dist.] 1997, orig. proceeding). When reviewing the facts alleged, courts
consider whether those facts "touch matters" covered by the underlying agreement. Id. 

 A party cannot be required to arbitrate unless he agreed to do so. Id. Nevertheless, "due
regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the
arbitration clause itself must be resolved in favor of arbitration." Webb, 89 F.3d at 258. The federal
policy in favor of enforcing arbitration agreements is so compelling that a motion to compel
arbitration should not be denied unless it can be said with positive assurance that the arbitration
agreement is not susceptible of an interpretation that covers the asserted dispute. Prudential Sec.,
Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995, orig. proceeding). However, the strong federal
policy favoring arbitration cannot serve to stretch a contractual clause beyond the scope intended by
the parties or allow modification of the plain and unambiguous provisions of an agreement. Belmont
Constructors, Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352, 356 (Tex. App.--Houston [1st
Dist.] 1995, orig. proceeding). 

 Here, there is no dispute that an arbitration provision exists in the 1999 Agreement; rather,
the dispute is whether that provision extends to the issues raised in the underlying suit. After
considering the arbitration provision in the 1999 Agreement and the factual assertions detailed in Ross
and Shahram's first amended petition, we believe that the scope of the arbitration provision does not
reach the dispute that is now before the trial court. The arbitration provision that relator relies upon
is found in the 1999 Agreement. Although that provision is very broad, it relates only to a dispute
arising out of the 1999 Agreement or any matter relating to the partnership. However, relator's
interest in the partnership was terminated on June 2, 2000, when Ross and Shahram bought relator's
interests in all of the Khaledi Companies. On that day, the parties executed a separate Consulting
Agreement.

 The Consulting Agreement provided that its purpose was to retain relator as a consultant in
an advisory and consultative capacity. By signing the Consulting Agreement, relator agreed to make
reasonable efforts to faithfully and diligently perform his duties to H.K. Global and to serve and
further the best interests of the company. In their lawsuit, Ross and Shahram detail the events leading
up to the purchase of relator's interests in the Khaledi Companies and the execution of the Consulting
Agreement. The suit also recounts the alleged activities that relator conducted in contravention to
his obligations under the Consulting Agreement. However, nowhere in the factual allegations do
Ross and Shahram reference the 1999 Agreement or mention that their complaints arise out of the
1999 Agreement or activities relating to the partnership itself. We conclude, therefore, that the
underlying suit is based on the Consulting Agreement. Accordingly, we hold that the facts and claims
alleged in the suit below fall outside the scope of arbitration provision in the 1999 Agreement.

 Conclusion


Because relator is not entitled to relief, his mandamus petition is denied.


 PER CURIAM

PUBLISH
1. H.K. Global Trading, Ltd. ("H.K. Global") is a partnership, created in 1999, is one of the seventeen Khaledi
Companies.
2. Because Ross and Shahram agreed to compensate relator by paying him over a six year period, they executed
a note that was secured by two deeds of trust. One deed of trust provided a deed of trust lien to relator in a warehouse
on Spivey Road, and the second deed of trust provided a lien to relator in a piece of property located on Grant Street.
Both of these properties are owned by H.A.R. Properties, one of the seventeen Khaledi Companies in which relator sold
his interest. In the underlying litigation, Ross and Shahram also asserted several claims related to these deeds of trust.
3. That agreement was signed by all three brothers on December 1, 1999. However, it was superceded by a new
agreement, signed only by Ross and Shahram, on June 20, 2000. The new agreement, which is currently in effect,
was signed by Ross and Shahram after relator sold his interest in the Khaledi Companies, and after he signed the
Consulting Agreement.