# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 14, 2023

Lyle W. Cayce
Clerk

―――――――

No. 21-30105

―――――――

Axiall Canada, Incorporated,

*Plaintiff—Appellee*,

*versus*

MECS, Incorporated,

*Defendant—Appellant*.

―――――――――――――――――――――――――

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:20-CV-1535

―――――――――――――――――――――――――

Before King, Smith, and Elrod, *Circuit Judges*.

Per Curiam:[*]

Axiall brought breach of contract, breach of warranty, and redhibition claims against MECS. MECS appeals the district court's denial of its motion to compel arbitration and moves to expedite the appeal. We AFFIRM the judgment of the district court and DENY as moot the motion to expedite the appeal.

―――――――――――――――――――――

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-30105

## I.

Plaintiff-Appellee Axiall Canada, Inc. ("Axiall") owns and operates a chlor-alkali manufacturing facility in Beauharnois, Quebec, Canada. Defendant-Appellant MECS, Inc. ("MECS") designs, produces, and sells equipment used and installed in chlor-alkali manufacturing facilities, including mist eliminators or "demisters."

This case arises out of a series of demister sales between the parties beginning in July 2019. For almost all of these transactions, MECS first issued a proposal to Axiall, Axiall next sent a Purchase Order, MECS then sent an Order Acknowledgement before shipping the demisters to Axiall, and, finally, Axiall accepted the demisters.[1]

Both of MECS's forms (*i.e.*, the proposals and Order Acknowledgements) contained language expressly limiting its acceptance of any purchase orders to MECS's standard terms and conditions of sales. Section 13 of these standard terms and conditions contained an arbitration clause stating that "[a]ny and all disputes arising out of, relating to or in connection with this Purchase Order . . . shall be finally and exclusively resolved by binding confidential arbitration."

Similarly, Axiall's forms (*i.e.*, the Purchase Orders) contained language that acceptance of its Purchase Orders indicated "irrevocable agreement to [Axiall's] General Terms and Conditions." Axiall's General Terms and Conditions contained two relevant provisions. First is a no-modification provision that a seller

> agrees to be bound to the exact terms specified herein, and that this [Purchase Order] constitutes a binding contract between

---

[1] In one instance, Axiall told MECS to begin production in accordance with a prior proposal.

2

No. 21-30105

> Seller and the entity receiving any Product ("Purchaser").
> Purchaser . . . hereby objects to and rejects any additional or
> modified terms proposed by Seller on which this sale would be
> rejected and any such proposed terms shall be deemed void.

Second is a forum selection clause stating that the seller "hereby agrees to exclusive and sole jurisdiction and venue in Lake Charles, Louisiana or Calvert City, Kentucky, as determined by [Axiall]." Arbitration is not mentioned in this provision or elsewhere in Axiall's forms.

After sending the Order Acknowledgements to Axiall, MECS shipped the demisters, which Axiall accepted.

In sum, below were the relevant events common to these transactions:

1. MECS sent Axiall a proposal incorporating an arbitration clause and containing express limitations on acceptance;
2. Axiall sent MECS a Purchase Order incorporating the forum selection clause and containing express limitations on acceptance;
3. MECS sent Axiall an Order Acknowledgment incorporating an arbitration clause and containing express limitations on acceptance (like MECS's proposal);
4. MECS shipped Axiall the demisters; and
5. Axiall accepted the demisters from MECS.

On October 23, 2020, Axiall brought suit against MECS in Louisiana state court; in December, the case was removed to the United States District Court for the Western District of Louisiana. In its complaint, Axiall alleged breach of contract, breach of warranties, and redhibition claims stemming from problems with the purchased demisters. MECS then moved to dismiss, or alternatively stay, and compel arbitration, arguing that Axiall was bound by a contract whose terms included the binding arbitration clauses in

No. 21-30105

MECS's forms. Axiall opposed the motion. The district court denied MECS's motion, holding that under Louisiana law, the parties had not agreed to the arbitration clauses. MECS appeals this denial and subsequently filed an opposed motion to expedite the appeal.

## II.

"We review a denial of a motion to compel arbitration pursuant to the [Federal Arbitration Act] *de novo*." *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532 (5th Cir. 2005). "Similarly, we review a district court's interpretation of state law *de novo*." *Id.*

When adjudicating a motion to compel arbitration, we "conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* "The second step is to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). We hold that, in each of the transactions at issue, there was no valid agreement to arbitrate and that the parties thus did not agree to arbitrate this dispute. Accordingly, we need not and do not consider any external legal constraints foreclosing arbitration.

## III.

This case presents a classic "battle of the forms." The parties, having exchanged their own forms with different terms, now dispute the nature of their relationship and the terms incorporated into any contract that may have been formed. Two provisions of the Louisiana Civil Code govern this dispute. First, Article 2601 concerns additional terms in an acceptance of an offer to

No. 21-30105

sell movables such as demisters. LA. CIV. CODE ANN. art. 2601. Second, Article 2602 concerns contracts formed by the conduct of the parties. *Id.* art. 2602. These two provisions are slightly different from but based on Section 2-207 of the Uniform Commercial Code ("UCC"). *See* N. Stephan Kinsella, *Smashing the Broken Mirror: The Battle of the Forms, UCC 2-207, and Louisiana's Improvements*, 53 LA. L. REV. 1555, 1556 (1993).

In relevant part, Article 2601 states that "[a]n expression of acceptance of an offer to sell a movable thing suffices to form a contract of sale if there is agreement on the thing and the price . . . unless acceptance is made conditional on the offeror's acceptance of the additional or different terms." LA. CIV. CODE ANN. art. 2601.

In its entirety, Article 2602 states that

> [a] contract of sale of movables may be established by conduct of both parties that recognizes the existence of that contract even though the communications exchanged by them do not suffice to form a contract. In such a case the contract consists of those terms on which the communications of the parties agree, together with any applicable provisions of the suppletive law.

*Id.* art. 2602.

Applying these provisions to the present facts, we first consider whether the actions of the parties ever formed a contract. If so, we then consider whether MECS's arbitration clauses were included as terms of said contract.

## A. Contract Formation

Under Louisiana law, a contract is formed through the parties' consent as established by offer and acceptance. *See* LA. CIV. CODE ANN. art. 1927 (1985). Here, neither party disputes that a contractual relationship

5

existed; instead, the parties disagree as to when their contracts were formed. At issue is thus which of the relevant forms exchanged between the parties, if any, constituted the offer and acceptance necessary for contract formation.

Axiall argues that MECS's proposals constituted the offers and Axiall's Purchase Orders the acceptances that formed the relevant contracts and that, per Article 2602, these contracts included only the agreed-upon terms contained in both MECS's and Axiall's forms, *i.e.*, not MECS's arbitration clauses. By contrast, MECS contends that the contracts were formed later in the parties' dealings when Axiall accepted delivery of the demisters. According to MECS, its proposals and Axiall's Purchase Orders were not offers and acceptances; rather, MECS's Order Acknowledgments operated as counteroffers to Axiall's Purchase Orders' proposed terms. Axiall then accepted these counteroffers through performance by accepting delivery of the demisters.

The proposals and Purchase Orders agree on the "thing" and price, which would normally suffice to form a contract under Article 2601. *See* La. Civ. Code Ann. art. 2601 ("An expression of acceptance of an offer to sell a movable thing suffices to form a contract of sale if there is agreement on the thing and the price . . . ."). But reading further, the text of Article 2601 precludes formation when "acceptance is made conditional on the offeror's acceptance of the additional or *different* terms." *Id.* (emphasis added). That is the case here. Offeror MECS's proposals were followed by Axiall's Purchase Orders, which explicitly conditioned Axiall's acceptances on MECS's subsequent acceptances of Axiall's "different" forum selection clause. *See id.* at cmt. f (noting that a term is "different" "when it varies a term contained in the offer"). Accordingly, Axiall's Purchase Orders did not constitute acceptances of MECS's proposals sufficient for formation.

No. 21-30105

For similar reasons, Axiall's Purchase Orders cannot be construed as initial offers or counteroffers. MECS's Order Acknowledgements do not constitute acceptances because these forms explicitly condition acceptance on an additional arbitration clause, which is absent from Axiall's forms. *See id.* In short, neither party's form communications—Axiall's Purchase Orders or MECS's Order Acknowledgements—were communications that, when read in succession, were sufficient to form contracts under Article 2601.

But the lack of sufficient written communication does not end our search for an enforceable contract. In such a scenario, contracts can be established through performance. Per Article 2602, "[a] contract of sale of movables may be established by *conduct* of both parties that recognizes the existence of that contract *even though the communications exchanged by them do not suffice to form a contract.*" La. Civ. Code Ann. art. 2602 (emphasis added). Here, the relevant conduct by both parties is (1) MECS's shipping the demisters following its sending of the Order Acknowledgement and (2) Axiall's accepting delivery of said demisters. These actions constitute conduct by the parties that "recognizes the existence of [a] contract," *i.e.*, one formed by an agreed-upon quantity of demisters delivered at the agreed-upon price, which is sufficient for formation of a contract under Article 2601. *See id.* art. 2601. Thus, applying Article 2602, a contract was established through performance.

## B. Contract Terms

We next consider whether the arbitration clause was included as a term of this contract. When, as here, a contract is established by the conduct of the parties, "the contract consists of those terms on which the communications of the parties agree, together with any applicable provisions

of the suppletive law."[2] LA. CIV. CODE ANN. art. 2602. The forms exchanged by the parties did not agree on MECS's proposed arbitration clause. MECS included an arbitration provision in the terms incorporated in its proposals and Order Acknowledgements, while Axiall's forum selection clause in its Purchase Orders explicitly states that MECS agrees to "exclusive and sole jurisdiction and venue in Lake Charles, Louisiana or Calvert City, Kentucky, as determined by [Axiall]." Because these communications do not evince agreement regarding jurisdiction, neither term is a part of the contract subsequently formed by the parties' conduct.

MECS's arguments to the contrary are unavailing. It primarily argues that its Order Acknowledgments were counteroffers whose terms Axiall accepted by performance (*i.e.*, by accepting delivery of the demisters).[3] But this argument misses the import of Article 2602's language governing which terms are part of a contract arising out of performance. Even if Axiall's receiving of the demisters constituted acceptance by performance, Article 2602 states that "the contract consists of those terms on which the communications of the parties agree." *Id.* MECS's arbitration clauses are not part of these agreed terms because Axiall objected to "any additional or modified terms proposed by [MECS] on which this sale would be rejected."

This explicit rejection by Axiall distinguishes this case from *Marino v. Dillard's, Inc.*, where defendant Dillard's sent the plaintiff Marino a written arbitration agreement. 413 F.3d 530, 531 (5th Cir. 2005). Marino signed an

---

[2] MECS does not argue for any applicable provisions of suppletive law that would give rise to contracts that include its arbitration clauses.

[3] Because there was no valid agreement to arbitrate, we need not and do not consider MECS's arguments about whether this underlying dispute falls within the scope of that agreement or whether any statutes or policies foreclosed the arbitration of the specific claims at issue here.

No. 21-30105

acknowledgment stating that continued employment (*i.e.*, conduct) would be interpreted as consenting to arbitration. *Id.* at 531–32. We held that this continued employment was sufficient to enforce the arbitration agreement. *Id.* at 533. But the facts here are quite different from *Marino*'s. Unlike the continued employment by the *Marino* plaintiff constituting acceptance of a written arbitration agreement, Axiall's accepting delivery cannot be interpreted as consenting to MECS's proposed terms because, in its Purchase Orders, Axiall had already rejected contractual terms different from its own. By contrast, the *Marino* plaintiff maintained his employment after signing an acknowledgment indicating that continued employment would constitute consent to the specific proposed terms in the arbitration agreement. No such acceptance by Axiall—written or conduct-based—is present here. And nothing else in *Marino* suggests that we can contravene Article 2602's straightforward language that, while performance can establish a contract where competing forms do not, said contract will only include terms on which the communications of the parties agree. And Axiall's communications do not evince agreement to MECS's proposed arbitration term.

In sum, there was no agreement between the parties to arbitrate because the parties never mutually agreed to MECS's proposed arbitration clauses. The district court thus correctly denied MECS's motion to compel arbitration.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED. The pending motion to expedite the appeal is DENIED as moot. The mandate shall issue forthwith.