Lillie **BARNES,** Gene Jones, Walter McDonald, Joan Beamon, Fate Mitchell and Charles Tolliver Plaintiffs

v.

**FIRST FRANKLIN FINANCE CORPORATION,** American Bankers Insurance Company of Florida, Voyager Life Insurance Company, Suzie Rawson, Frances Homble and Tracy Farrell Defendants

No. CIV.A.3:02 CV 1259 L.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 18, 2004.

Christopher W. Cofer, Cofer & Associates, P.A., Robert B. Ogletree, Ogletree Law Firm, PA, Jackson, MS, for Plaintiffs/Counter–Defendants.

Charles E. Griffin, Griffin & Associates, Randy L. Dean, Walter D. Willson, Wells,

Marble & Hurst, Jackson, MS, for Defendants/Counter–Claimants.

Stephen E. Gardner, Young, Williams, Henderson & Fuselier, Elizabeth B. Shirley, Burr & Forman, LLP, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the joint motion of defendants American Bankers Insurance Company of Florida and Voyager Life Insurance Company for summary judgment or, in the alternative, partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendants' motion is well taken and should be granted.

The plaintiffs in this case, all persons who procured loans from First Franklin Financial Corporation, filed suit against First Franklin, American Bankers, Voyager and others [1] asserting a variety of claims based on allegations that they were defrauded in connection with their loans, and charging, particularly, that insurance products were included in the loan package by defendants without their first ascertaining from plaintiffs whether such insurance products were wanted or needed and without disclosing to plaintiffs that such prod-

ucts had been included in their loan package.[2] Defendants contend that summary judgment is in order on all plaintiffs' claims.

In response to defendants' motion, plaintiffs initially argue that summary judgment cannot properly be entered at this time since they have not been afforded an adequate discovery period. Their objection in this regard is not well founded. "Rule 56 does not generally require any discovery prior to a grant of summary judgment, and thus, if a party cannot adequately defend such a motion without further discovery, Rule 56(f) is the proper remedy." *Howell v. Ferguson Enterprises, Inc.*, 93 Fed.Appx. 12, 2004 WL 231291, *1 (5th Cir.2004) (citing *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 887 (5th Cir. 1996)). In *Howell*, the court explained the requirements of Rule 56(f), stating:

> The nonmoving party on a motion for summary judgment who needs more time to obtain discovery may request a continuance pursuant to FED. R. CIV. P. 56(f). *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir.1991). According to Rule 56(f), a party seeking additional time to conduct discovery must 1) request extended discovery prior to the court's ruling on summary judgment; 2) place the court on notice that further discovery is being sought; and 3) demonstrate to the court with reasonable specificity how the re-

---

1. The case was originally filed in the Circuit Court of Holmes County against First Franklin, American Bankers and Voyager, all non-resident/diverse companies, and against three resident employees of First Franklin. The case was removed and jurisdiction retained by this court, over plaintiffs' objection, on the basis that the individual employees had been fraudulently joined.

2. Plaintiffs' complaint includes twelve counts, asserting causes of action for fraudulent mis-

representations and omissions; fraud; constructive fraud; civil conspiracy; unconscionability; fraudulent concealment and deceit; breach of fiduciary duty; breach of implied covenants of good faith and fair dealing; continuing fraudulent misrepresentations, suppressions and deceit; fraudulent concealment; economic deceit; tortious interference with the right to a jury trial and fraud in the procurement of the arbitration agreement.

quested discovery pertains to the pending motion. *Enplanar*, 11 F.3d at 1291. *Howell*, 93 Fed.Appx. 12, 2004 WL 231291, *1. Plaintiffs have not requested additional time to conduct discovery, and while they may be under the impression that they have put the court on notice that they want further discovery, they certainly have not affirmatively asked for it or undertaken to demonstrate with any specificity what discovery they might seek and how it would pertain to defendants' motion. Accordingly, the present motion is ripe for consideration.

Although the complaint in this cause is lengthy and includes numerous claims for relief, "the factual background" underlying those claims is, in plaintiffs' words, "simple." Plaintiffs obtained loans from First Franklin, and in association with most of their loans, insurance products, which were policies of American Bankers and Voyager, were included on the lender's "ready to go" loan documents which were presented to plaintiffs for their signature. Defendants never asked whether plaintiffs wanted or needed these products, and never told them they had been included in the loan package. With this understanding of the claims alleged, the court turns to the actual proof, in the form of the plaintiffs' deposition testimony and the loan documents.

Lillie Barnes testified that she is suing in this case about a loan she obtained in July 1999. Her grievance, as described in her deposition testimony, is that although she assumed she had disability insurance on all her loans with First Franklin, during the term of this loan, she was involved in an automobile accident that kept her from working, and upon inquiry, learned that she did not have disability insurance on the loan.

Gene Jones' complaint relates to loans he got from First Franklin in November 1998 and March 1999. He complains that the "insurance stuff" was not explained to him, in that he was not told that insurance was not required in order to get the loans.

Walter McDonald is purportedly suing about an April 1999 loan from First Franklin; he recalls that he selected insurance on the loan, but testified that while he does not recall what, if anything, was said about insurance, he does not think he was aware at the time that the insurance was not required in order for him to get the loan.[3]

Charles Tolliver took out a loan from First Franklin in November 1999, in connection with which he purchased or was sold life insurance, disability insurance and property insurance. Tolliver indicated that he is not sure why he is suing but thinks it has something to do with the insurance.[4]

Joan Beamon purchased or was sold life insurance and automobile insurance in connection with her August 23, 1999 loan from First Franklin, and complains in this action that although she already had life insurance of her own, and also had car insurance, she was never asked about whether she needed insurance and was instead presented papers for her signature

---

3. As the court noted in ruling on the motion to remand, Mr. McDonald indicated that he really does not know what it is about the insurance matters that justifies this lawsuit. In fact, he testified that he did not even know he was a plaintiff in the case until after the lawsuit had been filed, and has no idea how his name came to be on the suit.

4. The court observed in its opinion denying the motion to remand that all Mr. Tolliver seems to know is that he got involved in this suit after he got a letter in the mail from an attorney about a class action lawsuit against First Franklin. He knows nothing personally about what defendants may have done wrong, and testified that "[w]hat they have done is probably—is whatever the lawyers have deemed them to do wrong."

which already had insurance charges included on them, without any accompanying explanation from the loan officer concerning the insurance charges.

Fate Mitchell was charged for life insurance and property insurance in connection with his January 1999 loan from First Franklin, and complains that no one explained the loan documents to him, with reference in particular to the insurance matters.

As defendants point out in their motion, none of these plaintiffs claims that anyone affirmatively told him or her that insurance was required as a condition of his or her loan. In addition, defendants correctly note that the loan documents executed by plaintiffs clearly state that insurance is not required as a condition of the loans. Defendants thus submit that plaintiffs' claims are foreclosed as a matter of law, inasmuch as knowledge of the contents of the documents is imputed to plaintiffs. *See Stephens v. Equitable Life Assurance Society of the United States,* 850 So.2d 78, 82 (Miss.2003) ("[I]nsureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy."); *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.,* 584 So.2d 1254, 1257 (Miss.1991) ("[A] party is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract".); *Russell v. Performance Toyota, Inc.,* 826 So.2d 719, 726 (Miss.2002) ("In Mississippi, a person is charged with knowing the contents of any document that he executes".).

That is, defendants argue that plaintiffs could have known their options concerning insurance products had they simply read their loan documents, and as a matter of law, cannot recover on any theory, whether it be fraud or some other theory, grounded on their professed ignorance of information that was in fact contained in their own loan documents.[5]

In response to defendants' motion, plaintiffs argue that defendants had a fiduciary duty of disclosure, and not only failed to tell plaintiffs the obviously material fact that insurance was not required as a condition of their loans, but also, by presenting plaintiffs with pre-prepared loan documents which included charges for insurance, impliedly represented that the insurance was required. Plaintiffs further argue, citing *Johnson v. Brewer,* 427 So.2d 118 (Miss.1983), that under Mississippi law, an exception to the rule of imputed knowledge of the contents of one's contracts exists in cases where a party is fraudulently induced to forego reading the subject contract. For the reasons that follow, plaintiffs' position(s) are without merit.

First, despite plaintiffs' assertion to the contrary, grounded in the broad general proposition that a fiduciary relationship can arise in informal relations where one person trusts in or relies upon another, *see Lowery v. Guaranty Bank & Trust Co.,* 592 So.2d 79, 83 (Miss.1991), there is no factual basis upon which a fiduciary relationship could reasonably be found to exist between plaintiffs and the movant defendants. Although at least one plaintiff testified that he trusted the loan agent, who was an agent for the lender *and* insurance defendants,[6] this court has

---

5. All of plaintiffs' claims are based on the premise that relative to their loan transactions, plaintiffs were unaware of their options regarding insurance.

6. Fate Mitchell testified that his "faith and trust in the company" led him to forego reading the loan documents before signing them; yet he had never dealt with defendants before his one loan transaction.

repeatedly emphasized that unilateral trust alone will not support a finding of a fiduciary relationship and there must instead be a finding of trust *together with some circumstance which justifies that professed trust. See Strong v. First Family Financial Servs., Inc.*, 202 F.Supp.2d 536, 542 (S.D.Miss.2002) (allegation that plaintiffs "placed special trust and confidence in their lender" was "nothing more than an assertion that plaintiffs trusted their lender (and by inference, its employees) because it was their lender, which [was] plainly insufficient under [Mississippi law] to support finding that a fiduciary relationship existed."); *Deramus v. Jackson Nat. Life Ins. Co.*, 92 F.3d 274, 278 (5th Cir.1996) ("relative to the creation of a confidential relationship, [Mississippi law] holds that there must be something about the relationship between the parties which would justifiably create an expectation on the part of one party that the other was protecting the first party from the occurrence of a particular risk; and, moreover, such justifiable reliance must have necessarily caused the first party to be lulled into a false sense of security so that the first party did not protect his own interest as he might have ordinarily"). Plaintiffs

herein have identified no such circumstances. Accordingly, plaintiffs' claim for misrepresentation based on the alleged agents' nondisclosure of the fact that insurance was not required for the loan fails as a matter of law.

■ Plaintiffs' alternate theory that defendants, through the loan officers, impliedly represented that insurance was a prerequisite to their loans, is likewise unsound. Plaintiffs do not deny, nor could they deny that their loan documents disclosed plaintiffs' options regarding available insurance products.[7] Nor do plaintiffs deny that they were capable of reading the loan documents and were not prevented from doing so. Rather, they simply submit that summary judgment cannot properly be entered at this time in view of the *Johnson v. Brewer* exception.

■ Two points should be made. First, only two plaintiffs could potentially benefit from application of *Johnson v. Brewer*, as interpreted by plaintiffs, for only two plaintiffs, Lillie Barnes and Gene Jones, have claimed that their loan agents induced them not to read their loan documents; the rest of the plaintiffs have

---

7. Plaintiffs' loan agreements recited, in pertinent part, as follows:

**PERSONAL PROPERTY INSURANCE**: Personal property insurance coverage is required on the personal property given as security. You may obtain it from anyone you want or provide it through an existing policy provided the insurance company is acceptable to us. If we write this insurance through a company we represent, we will write dual interest property insurance for the term of the loan. The premium and coverage amounts for this insurance are shown above....
**AUTOMOBILE INSURANCE**: Insurance coverage is required on the automobile given as security. You may obtain it from anyone you want or provide it through an existing policy provided the insurance company is acceptable to us. If we write this

insurance through a company we represent, we will write limited physical damage insurance for the term of the loan. The premium and coverage amounts for this insurance are shown above...

.    .    .    .    .

.    .    .    .    .

**CREDIT LIFE AND CREDIT DISABILITY INSURANCE**: Credit insurance is not required to obtain this loan. If you choose for us to write individual credit life insurance, we will write individual level term credit life insurance on the Borrower who signs first on the reverse side hereof....
**CREDIT INSURANCE**: You acknowledge that the Lender and/or its agent has a financial interest in the sale of any insurance and may benefit from the sale of such insurance by virtue of commission income which it may receive.

readily admitted that they simply chose not to read their contracts.[8] Second, plaintiffs' proffered interpretation of *Johnson v. Brewer* as applicable here is not supportable.

In *Johnson*, the Mississippi Supreme Court applied an exception to the imputed knowledge rule, stating,

> If a person is ignorant of the contents of a written instrument and signs it under mistaken belief, induced by misrepresentation, that it is an instrument of a different character, without negligence on his part, the agreement is void.

*Johnson*, 427 So.2d at 123. Addressing this exception, the Fifth Circuit explained in *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 465 (5th Cir.2003), that "[a]lthough it used the word 'induced', it is clear from this [quoted] language that the Mississippi Supreme Court is discussing fraud in factum," that is, "where the character of the document is misrepresented." Thus, in *Ross*, the court held that "this exception [to the rule of imputed knowledge] [could not] apply because Plaintiffs [did] not claim they misapprehended the character of the documents." *Id.* at 465. Likewise in the case at bar, neither Ms. Barnes nor Ms. Jones claims to have misapprehended the *character* of the loan documents. They, like their co-plaintiffs, are thus deemed to have knowledge of the contents of those documents and cannot succeed on their claim(s) in this action, all of which are based on their professed ignorance of the circumstances under which insurance was, or was not required on their loans. *Cf. Ross*, 344 F.3d at 465 (holding that a party may not justifiably rely on an oral representation contrary to the terms of a written contract).

Based on the foregoing, the court concludes that defendants' motion for summary judgment is well taken.

Accordingly, it is ordered that the motion of defendants American Bankers and Voyager for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

## JUDGMENT

For the reasons given in this court's memorandum opinion and order of this date, it is ordered and adjudged that plaintiffs' complaint in this cause is dismissed with prejudice.

---

**8.** Mr. McDonald actually testified that he cannot remember whether he read his loan documents, but he agreed that no one prevented him from doing so.

Mr. Tolliver recognized that the loan documents recite that insurance was not required in order to obtain the loan, but he stated that he "didn't take the time to read over the documents" before signing them, though no one prevented him from doing so.

Ms. Beamon agreed that she could have, but did not read the insurance disclosures in the documents which explained that credit life and disability were not required in order to get the loan, and which disclosed that property insurance, if required, was not required to be secured through the lender.

Fate Mitchell acknowledged in his deposition testimony that the loan documents disclosed that the insurance he purchased was not required for the loan. He stated, though, that while he could have done so, he did not read the loan papers, even though nothing or no one prevented him from doing so.