**PACIFIC LIFE INSURANCE CO., Plaintiff,**

v.

**Margie E. HEATH, Defendant.**

**No. 1:04CV712LG–RHW.**

United States District Court, S.D. Mississippi, Southern Division.

May 5, 2005.

Walter D. Willson, Wells Marble & Hurst, PLLC, Jackson, MS, for Plaintiff Pacific Life Insurance Company.

William Lee Guice, III, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GUIROLA, District Judge.

BEFORE THE COURT is the Motion of the Plaintiff, Pacific Life Insurance Company, for Summary Judgment [5], filed on December 17, 2004. The Defendant filed a response on December 30, 2004, and the Plaintiff filed a reply on January 18, 2005. For the reasons set forth below, the Plaintiff's motion should be granted.

### FACTS AND PROCEDURAL HISTORY

The Defendant, Margie E. Heath, is a retired nurse. Heath invested her retirement funds through Larry Ratcliff, a registered representative for WMA Securities, Inc., which is a broker-dealer authorized to sell products of Plaintiff, Pacific Life Insurance Company. Ratcliff managed Heath's retirement accounts for about twelve years. "In February 2001 and May 2001, [Heath] applied for and purchased two separate non-qualified variable annuity contracts [issued by Pacific Life]." Pl.'s Br. in Support of Mot. for Summ. J., pp. 1–2, filed Dec. 17, 2004. Heath purchased the Pacific Life annuities through WMA. As part of the transaction, Heath executed a new account form with WMA which stated in pertinent part as follows:

CLIENT PRE–DISPUTE ARBITRATION

I(we) agree that unless unenforceable due to federal or state law, any controversy arising out of or related to my (our) accounts, the transactions with WMAS, its officers, directors, agents, registered representatives and/or employees for me (us), or related to this agreement or breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc., (NASD).... I(we) understand that:

(1) ARBITRATION IS FINAL AND BINDING ON THE PARTIES (I.E., YOU AND WMAS).

(2) YOU AND WMAS ARE WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

(3) PRE–ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

(4) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING, AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

(5) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

Pl.'s Br., pp. 2–3, *quoting* New Account Application, p. 2, Ex. A, Pl.'s Mot. for

Summ. J., filed Dec. 17, 2004. Ratcliff, on behalf of Heath, subsequently sold the Pacific Life annuities and purchased annuities with Allianz. Although Ratcliff told Heath that the transaction "would not cost [her] any money," Heath's Compl., p. 4, Civil Action No. A2402–04–104, Circuit Court of Harrison County, Second Judicial District, Ex. C, Pl.'s Mot. for Summ. J., the transactions ultimately resulted in "very large surrender fees and . . . Heath suffered new lock in provisions on her money." Heath's Compl. in Circuit Court, p. 4, Ex. C, Pl.'s Mot. for Summ. J. As a result of the imposition of these fees and because "the other Defendants condoned this practice of short-term trading of annuity contracts," Heath's Compl., p. 4, Heath filed her complaint in the Circuit Court of Harrison County on June 25, 2004. In her complaint, Heath asserted claims of constructive fraud, breach of fiduciary duty, negligence, intentional act, gross negligence, breach of the implied covenant of good faith and fair dealings, alter-ego, suitability, excessive activity or churning, failure to supervise, and civil conspiracy. She named the following as defendants in her complaint: Larry Ratcliff, Pacific Life, American Skandia, Allianz Life Insurance Corporation of North America, WMA Securities, Inc., and Consumer Concepts Investments, Inc.

On September 7, 2004, Pacific Life filed its complaint in this Court seeking to compel arbitration. Pacific Life filed this motion on December 17, 2004, contending that it is entitled to summary judgment on its complaint and therefore, the Court should compel Heath to submit all of her claims in the underlying action to binding arbitration. In addition, Pacific Life seeks a stay of the state court proceedings pending arbitration. Heath, on the other hand, contends that the arbitration agreement is invalid because it was procured by fraud and because it is procedurally and substantively unconscionable.

## DISCUSSION

Fed. R. Civ. P. 56 permits any party to a civil action to move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. In effect, Rule 56(c) provides that as a matter of law, upon admitted or established facts, the moving party is entitled to prevail. Summary judgment "is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists." *Whitaker v. Coleman*, 115 F.2d 305 (5th Cir.1940). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324–25, 106 S.Ct. at 2553–54. The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

*Is Pacific Life Entitled to an Order Compelling Arbitration?*

The court must apply the following analysis to determine whether the parties must submit to arbitration:

Courts conduct a two-step inquiry when deciding whether parties must submit to arbitration. *See Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996). The first step is to decide whether the parties agreed to arbitrate their dispute. *See id.* at 258. "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* To resolve these issues, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Id. (quoting First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)). Once a court determines that the parties agreed to arbitrate, the court must assess " 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.' " *Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). *OPE Int'l LP v. Chet Morrison Contractors, Inc.,* 258 F.3d 443, 445–46 (5th Cir. 2001). "[T]he parties' intentions control.' " *McKee v. Home Buyers Warranty Corp.,* 45 F.3d 981, 984 (5th Cir.1995), *quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). However, " 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.' " *McKee,* 45 F.3d at 984, *quoting Volt Info. Sciences, Inc. v. Stanford Univ.,* 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989).

*Is there a valid agreement to arbitrate between the parties?*

■ The Court must first determine whether there is a valid agreement to arbitrate between the parties. Heath does not dispute that she executed an agreement with WMA which included an arbitration clause. Pacific Life was not a signatory to that agreement. According to Pacific Life, however, Pacific Life is entitled to arbitrate the claims because Heath's claims against Pacific Life are intertwined with the claims that are subject to the arbitration agreement. Because Heath does not dispute that Pacific Life's claims are intertwined with those that are subject to the arbitration agreement, Pacific Life is entitled to arbitrate its claims under the agreement between WMA and Heath. *See Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 527–28 (5th Cir.2000) (following the Eleventh Circuit's test, set forth in *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999), for determining whether equitable estoppel should apply to allow a nonsignatory to compel arbitration when the claims are intertwined).

Heath contends that the arbitration agreement is invalid because it was procured by fraud. According to Heath, Ratcliff represented to her that she was signing a new account agreement, which Heath contends was false because the document included an agreement requiring her to submit to binding arbitration. Heath claims that "[t]his agreement constitutes significantly more than a mere new account agreement." Heath's Resp. to Mot. for Summ. J., p. 5, filed Dec. 30, 2004.

■ Two essential elements of establishing fraud, which must be shown by clear and convincing evidence, are (1) a representation and (2) its falsity. *Mabus v. St. James Episcopal Church,* 884 So.2d 747, 762 (Miss.2004). Heath has failed to provide any evidence of a false representation that was made to her. Ratcliff told Heath that the document was a new account form, and it was. The document is entitled "New Account Application," and

includes the amount of her investment, and the type of product that she was purchasing. Heath has also failed to show or even allege that Ratcliff fraudulently concealed from her the existence of the arbitration agreement. Because Heath has not identified any representation made to her that was false, she has failed to show that the arbitration agreement was procured by fraud and thus invalid.

Heath also contends that the defendants in the underlying action breached their fiduciary duty to her by failing to disclose to her the existence of the arbitration agreement in the new account application and the consequences of that agreement. Pacific Life contends that Heath has failed to show the existence of a fiduciary relationship, which must be shown by clear and convincing evidence. In addition, Pacific Life contends that even if it or Ratcliff owed a fiduciary duty to Heath to disclose the arbitration agreement, Heath was not relieved of her duty to read the document.

██ To establish the existence of a fiduciary relationship, "there must ... be a finding of trust *together with some circumstance which justifies that professed trust.*" *Barnes v. First Franklin Fin. Corp.,* 313 F.Supp.2d 634, 639 (S.D.Miss. 2004) (citation omitted). "[U]nilateral trust alone will not support a finding of a fiduciary relationship." *Barnes,* 313 F.Supp.2d at 639. Heath contends that she trusted Ratcliff and had confidence in him to manager her money and take care of her. Heath's assertion of unilateral trust alone is simply insufficient to meet her burden. Heath has failed to show that the existence of a fiduciary relationship which may have imposed upon Pacific Life or Ratcliff the duty of informing her that an arbitration agreement was included in the new account form. Moreover, even if such a fiduciary duty existed and was breached, Heath is not excused from her

legal obligation to read a document before signing it. *Terminix Int'l Inc. v. Rice,* —— So.2d ——, ——, 2004 WL 2823074, at *4 (Miss.2004) (citations omitted). Heath has therefore failed to show a material fact question on the issue of the validity of the arbitration provision. For this reason, the parties entered into a valid arbitration agreement.

*Does the dispute fall within the scope of the arbitration agreement?*

Heath argues that "a majority of [her] claims arise from tort, not contract principles." Heath's Resp., p. 10. She therefore contends that "[t]he 'any controversy' language set forth by Plaintiff, in the context of the agreement they allege it was apart of, should not encompass those tort claims." Heath's Resp., p. 10. Pacific Life contends that the agreement states that it applies to "any controversy," and does not limit the application of the arbitration provision to contract claims only.

██ A party to an arbitration agreement cannot avoid its consequences by simply "casting [her] claims in tort, rather than in contract." *Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 526 (5th Cir.2000) (citation omitted). The arbitration agreement clearly states that it applies to "any controversy." Based upon the broad language of the arbitration agreement, Heath's claims come within the scope of the arbitration agreement; therefore, the parties agreed to arbitrate these claims.

*Do any legal constraints external to the parties' agreement foreclose the arbitration of Heath's claims?*

██ Heath contends that the arbitration agreement is unenforceable because it is both procedurally and substantively unconscionable. "Unconscionability has been defined as an absence of meaningful choice on the part of one of the

parties, together with contract terms which are unreasonably favorable to the other party...." *Norwest Fin. Miss., Inc. v. McDonald,* — So.2d —, —, 2005 WL 67487, \*4 (Miss.2005). The Mississippi Supreme Court has described procedural unconscionability as follows:

> The indicators of procedural unconscionability generally fall into two areas: (1) lack of knowledge, and (2) lack of voluntariness. A lack of knowledge is demonstrated by a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms. A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.

*Norwest,* — So.2d at —, 2005 WL 67487, \*4, *citing Entergy Miss., Inc. v. Burdette Gin Co.,* 726 So.2d 1202, 1207 (Miss.1998) (internal citations omitted). "[U]nder Mississippi law, ... a contracting party is under a legal obligation to read a contract before signing it." *Terminix,* — So.2d at —, 2004 WL 2823074, at \*4, *citing McKenzie Check Advance of Miss., LLC v. Hardy,* 866 So.2d 446, 455 (Miss. 2004) (other citations omitted). Moreover, " 'a person is charged with knowing the contents of any document that he executes.' " *Terminix,* at —, 2004 WL 2823074, at \*4, *quoting Russell,* 826 So.2d at 725 (other citation omitted).

■ In this case, the New Account Application states just above the signature line that "I (we) understand and agree to the terms and conditions of the client acknowledgment/agreement/disclosure located on the back of this application." New Account Application, dated May 29, 2001, att. as Ex. B. Pl.'s Mot. to Compel Arbitration, filed Dec. 17, 2004. The arbitration agreement is located on the back of the application. The arbitration provision is not obscured by inconspicuous print. *See Id.,* at —, 2004 WL 2823074, at \*4. In addition, Heath has not offered any evidence that tends to show that she entered into the contract involuntarily. *Id.* Moreover, Heath has not provided any evidence that tends to show that she was denied the opportunity or time to review the contents of the agreement, or inquire about its contents. *Id.* Heath has failed to provide any evidence that tends to show that the arbitration agreement is procedurally unconscionable.

■ Heath also contends that the arbitration agreement is substantively unconscionable because it "does not indicate who will bear the rather steep cost of arbitration proceedings." Heath's Resp., p. 9. Pacific Life contends that Heath has failed to meet her burden in "showing the likelihood that arbitration *would* be prohibitively expensive." Pacific Life's Reply Br., p. 17, filed Jan. 18, 2005. Pacific Life further contends that "[w]ithout such proof, '[n]either the possibility that a party to arbitration may be required to pay arbitration costs, *nor the arbitration clause's silence as to costs* renders an arbitration clause per se unenforceable.' " Pacific Life's Reply Br., p. 17, *quoting First Family Fin. Servs., Inc. v. Sanford,* 203 F.Supp.2d 662 (N.D.Miss.2002).

" 'Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive.' " *United Credit Corp. v. Hubbard,* — So.2d —, —, 2004 WL 2823085, \*3 (Miss. Dec. 9, 2004), *citing East Ford, Inc. v. Taylor,* 826 So.2d 709, 714 (Miss.2002). Clearly, the arbitration provision is silent

on the issue of which party will bear the costs of arbitration. The United States Supreme Court has held, however, that "that fact alone is plainly insufficient to render it unenforceable[ ] [because] [t]he 'risk' that [Heath] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000). Likewise, in this case, Heath has not provided any evidence about the expected costs, or that she will be responsible for paying them. "To invalidate the agreement [under these circumstances] would undermine the 'liberal federal policy favoring arbitration agreements.'" *Randolph,* 531 U.S. at 91, 121 S.Ct. 513, *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Heath has failed to provide any evidence that tends to show that the arbitration agreement is substantively unconscionable.

Heath has failed to show that the agreement is procedurally or substantively unconscionable. Heath has not alleged the existence of any other legal constraint which would foreclose the arbitration of her claims. For this reason, Heath has failed to show the existence of a material fact question on the issue of whether a legal constraint external to the agreement forecloses the arbitration of her claims. Therefore, Pacific Life's motion for summary judgment should be granted.

*IS PACIFIC LIFE ENTITLED TO A STAY OF THE STATE COURT PROCEEDINGS?*

Pacific Life seeks a stay of the underlying action in state court pending arbitration. Heath does not address the issue in her response. Because all of the claims raised in Heath's state court complaint are arbitrable, a stay of the state court proceedings is appropriate. *Am. Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 707 (5th Cir.2002) (affirming district court's decision to stay state court proceedings); *Am. Bankers Ins. Co. of Fla. v. Milsap,* 350 F.Supp.2d 730, 734 (S.D.Miss.2004) (holding that underlying action should be stayed pending arbitration whether it is pending in federal court or state court); 28 U.S.C. § 1651.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that the Motion of the Plaintiff, Pacific Life Insurance Company, for Summary Judgment [5] should be and is hereby **GRANTED.** Defendant's claims against the Plaintiff shall be submitted to arbitration.

**IT IS FURTHER ORDERED AND ADJUDGED,** that the Plaintiff's motion to stay the Defendant's claims against the Plaintiff in the underlying action filed in the Circuit Court of Harrison County, Mississippi, Second Judicial District, Civil Action No. A2402–04–104, pending completion of arbitration of those claims, should be and is hereby **GRANTED.** This case is hereby closed.