United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 29, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————

No. 05-60391

———————

FORD MOTOR COMPANY

Plaintiff - Appellant

v.

WALLACE ABLES, ET AL

Defendants - Appellees

———————

Appeal from the United States District Court
for the Southern District of Mississippi, Jackson
No. 3:04-CV-00152

———————

Before JOLLY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

The issue before us is whether Defendants-Appellees'
("Defendants") claims against Plaintiff-Appellant Ford Motor
Company ("Ford") in Mississippi state court are subject to
binding arbitration under the Federal Arbitration Act ("FAA"), 9
U.S.C. §§ 1-16 (2000). The district court denied Ford's motion
to compel arbitration, concluding that Defendants' fraud claims

———————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

-1-

against Ford fall outside the scope of the arbitration clauses in the retail installment contracts and that Ford, as a non-signatory to these contracts, may not enforce arbitration. For the following reasons, we REVERSE and REMAND.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from automobile purchases by Defendants at Greater Canton Ford Mercury, Inc. ("GCFM"), a dealership formerly located in Canton, Mississippi. In purchasing a vehicle from GCFM, each Defendant entered into a contract entitled "Mississippi Simple Interest Vehicle Retail Instalment Contract." The contract described the automobile purchaser as the "Buyer." The first line of text in the contract stated:

> You, the Buyer . . . may buy the vehicle described below for cash or on credit. The cash price is shown below as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.

The contract identified the vehicle at issue, and then set out the specifics of the financing agreement, including, inter alia, the interest rate, the number of payments, the amount of each payment, when payments are due, and the terms of prepayments and late payments. The contract also included "Additional Agreements" on payments, the creditor's security interest in the vehicle, warranties, insurance, late charges, default, and consumer reports.

The contract required the buyer to initial under a clause

stating, "YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO BE BOUND BY THE ARBITRATION PROVISIONS ON THE REVERSE SIDE OF THIS CONTRACT." The arbitration provisions on the reverse side of the contract stated:

> Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Creditor ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Such Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity of this clause, or arbitrability of any issue; 3) Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

Each Defendant initialed the arbitration provision and signed the retail installment contract as a "Buyer." An agent of GCFM signed the contract as the "Seller."

In August 2003, Defendants (along with other buyers who are not parties to the instant appeal) filed suit against Ford, GCFM, and others in Mississippi state court.[1] Defendants alleged that Ford and the other state court defendants conspired to defraud them by inducing them to purchase "certified, pre-owned" vehicles that were not properly certified. The state court complaint

---

[1] In total, forty-four buyers commenced suit against Ford, GCFM, and others in state court. Twenty-one of the buyers signed arbitration agreements as part of their retail installment contracts and are Defendants in the instant appeal.

included claims for fraudulent inducement, fraud, civil conspiracy, breach of implied covenant of good faith and fair dealing, negligent training and supervision, negligent infliction of emotional distress, negligence and gross negligence, and bad faith.

In February 2004, Ford initiated the present action in federal district court to compel arbitration of Defendants' claims under the FAA.  Ford argued that Defendants' claims fell within the scope of the arbitration provision because the clause required arbitration of any claim "related to" the contract effecting the purchase.  Even though it was not a signatory to the retail installment contract, Ford maintained that it could compel arbitration because Defendants had raised allegations of substantially interdependent and concerted misconduct by Ford and GCFM, a signatory to the contract.

On March 31, 2005, the district court entered an order denying Ford's motion to compel arbitration.  The district court concluded that "[t]he individual defendants' fraud claims against Ford seemingly fall outside of the arbitration agreement."  It further stated that it was "not persuaded" that Ford had met the standard to enforce arbitration as a non-signatory of the retail installment contract.  On April 22, 2005, Ford filed this appeal.

## II.  DISCUSSION

On appeal, Ford challenges both of the district court's

reasons for denying its motion to compel arbitration. First, Ford argues that the district court erred in concluding that Defendants' claims "seemingly" fall outside the scope of the arbitration clause because the clause is broad enough to encompass any claim relating to the purchase of the vehicle. In the alternative, Ford maintains that questions about whether claims are arbitrable should be decided by the arbitrator in the first instance and not the court. Second, Ford contends that the district court incorrectly concluded that Ford could not maintain this action because it was a non-signatory to the retail installment contracts signed by Defendants. Ford claims that it meets the standard set forth in Grigson v. Creative Artists Agency, LLC, 210 F.3d 524 (5th Cir. 2000), for compelling arbitration as a non-signatory to an arbitration agreement.

We will address each argument in turn. This court reviews a district court's order denying a motion to compel arbitration de novo. Webb v. Investacorp, Inc., 89 F.3d 252, 257 (5th Cir. 1996).

A.    Scope of the Arbitration Provision

"Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate unless the court determines the parties agreed to arbitrate the dispute in question." Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1064 (5th Cir. 1998). In adjudicating a motion to compel arbitration under the FAA, this court conducts a

two-step inquiry.  Webb, 89 F.3d at 257-58.  The first question is whether the parties agreed to arbitrate the dispute in question.  Id. at 258.  This step involves two considerations: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'"  Pers. Sec. & Safety Sys. v. Motorola Inc., 297 F.3d 388, 392 (5th Cir. 2002) (quoting OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir. 2001)).  The second question is "'whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims.'"  Webb, 89 F.3d at 258 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

Ford and Defendants do not dispute that the retail installment contracts contain valid arbitration provisions and that there are no external constraints that preclude arbitration of Defendants' claims.  Thus, the central question is whether the arbitration provision covers the claims alleged in Defendants' state court complaint.  In addressing questions of scope, we are mindful that "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'"  See id. (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76 (1989)).  "Arbitration should not be denied 'unless it can be said with

-6-

positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" Pennzoil Exploration & Prod. Co., 139 F.3d at 1067 (quoting Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990)) (alteration omitted).

We start with the language of the arbitration provision itself. The clause mandates arbitration of "any Claim related to" the retail installment contract. The provision then provides an inexhaustive list of examples:

> 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity of this clause, or arbitrability of any issue; 3) Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

The Supreme Court and this court have characterized arbitration provisions with similar language as "broad arbitration clauses capable of expansive reach." Pennzoil Exploration & Prod. Co., 139 F.3d at 1067 (stating that "[a]ny dispute, controversy or claim arising out of or in relation to or in connection with this Agreement" is a broad arbitration clause that "embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute"); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 397-98 (1967) (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or

-7-

claim arising out of or relating to this Agreement"). An arbitration provision, such as the one here, that purports to cover all disputes "related to" the contract or any resulting transaction or relationship is "not limited to claims that literally 'arise under the contract.'" <u>Pennzoil Exploration & Prod. Co.</u>, 139 F.3d at 1067. Rather, "[w]ith such a broad arbitration clause, it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." <u>Id.</u> at 1068.

Defendants' claims touch matters covered by the retail installment contract. In their state court complaint, Defendants alleged that Ford's fraudulent scheme "induce[d] potential customers to purchase certified pre-owned vehicles that had not undergone the certification process" and "charge[d] customers for products and/or services that had not been performed" by GCFM. Compl. ¶¶ 62-63. Defendants further claimed that they were induced "to purchase vehicles from Greater Canton Ford based on false and fraudulent representations." <u>Id.</u> ¶ 66. These claims "relate to" the vehicle purchases that were the subject of the retail installment contracts. The arbitration provision-- covering any claim "arising out of or relating to" the retail installment contract or any resulting transaction or relationship--is broad enough to encompass claims relating to the sale of the vehicles.

We are not persuaded by Defendants' argument that the retail

installment contract covers only an extension of credit to purchase the vehicle.  As an initial matter, the retail installment contract is the only document in the record evidencing the purchase of the vehicles.  It states that "[by] signing this contract, [the buyer] choose[s] to buy the vehicle on credit under the agreement on the front and back of this contract."  It uses the terms "total sale price," "purchase," and "buy," describes the parties as buyer and seller, and states the terms of the purchase between the buyer and seller, including financing terms.  The express terms of the contract support an interpretation that the retail installment agreement is a sales contract and not simply a credit arrangement.

Defendants' argument is not only contradicted by the contract itself but also at odds with the statutory definition of retail installment contract under Mississippi law, which defines such transactions as purchases.  See MISS. CODE. ANN. § 63-19-3(f) (2004 & Supp. 2006) (defining a "retail installment transaction" as "any transaction evidenced by a retail installment contract entered into between a retail buyer and a retail seller wherein the retail buyer buys a motor vehicle . . . from the retail seller at a time price payable in one or more deferred installments").  In light of the strong federal policy in favor of arbitration, we conclude that the arbitration provision is

broad enough to encompass Defendants' claims.[2]  See Pers. Sec. &
Safety Sys., 297 F.3d at 392 (noting the "strong federal policy
in favor of enforcing arbitration agreements") (internal
quotation marks and citation omitted).

B.   Non-Signatory to Arbitration Provision

Having concluded that Defendants' claims fall within the
scope of the arbitration clause, we must determine whether Ford
can compel arbitration even though it is a non-signatory to the
agreements.  Without citing this court's decision in Grigson, 210
F.3d 524, the district court stated it was "not persuaded" by
Ford's argument that it could maintain the action to compel
arbitration.

Under Grigson, a non-signatory may compel arbitration under
an equitable estoppel theory if it demonstrates that the case
fits one of two different circumstances: (1) "'when the signatory

---

[2]  Because we hold that the district court erred in
concluding that Defendants' claims "seemingly" fall outside the
scope of the arbitration provision, we need not address Ford's
alternative argument that questions of arbitrability are for the
arbitrator to decide.  Even if we were to reach Ford's
alternative argument, there is a question whether Ford
sufficiently raised this argument before the district court, as
it was included only in a footnote in Ford's reply brief before
the district court and the district court did not address the
issue in its order.  See Kelly v. Foti, 77 F.3d 819, 823 (5th
Cir. 1996) ("A party must press, not merely intimate, an
argument, in order to preserve it for appeal.  The raising party
must present the issue so that it places the opposing party and
the court on notice that a new issue is being raised.") (internal
quotation marks and citations omitted); see also In re Liljeberg
Enters., Inc., 304 F.3d 410, 427 n.29 (5th Cir. 2002) (stating
that to avoid waiver the argument must be presented in a
sufficient manner to permit the district court to rule on it).

to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory'"; or (2) "'when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" 210 F.3d at 527 (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)) (emphasis omitted).

As Ford points out, Defendants' state court complaint includes allegations of substantially interdependent and concerted misconduct by Ford (a non-signatory) and GCFM (a signatory), thus meeting one of the tests in Grigson for equitable estoppel. See COMPL. ¶¶ 61, 77-78 (alleging, for example, that state court defendants, including Ford and GCFM, "intentionally, willfully, maliciously and tortiously conspired between themselves and with others to unlawfully injure Plaintiffs" and that their "scheme was calculated to and in fact did cause Plaintiffs to purchase vehicles from [GCFM] based on false and fraudulent representations"). In any event, Defendants have abandoned their argument against arbitration by a non-signatory to the contract, stating in their brief that they "do not dispute that the doctrine of equitable estoppel as it has been developed in cases since Grigson may permit Ford to compel arbitration of claims alleging 'interdependent and concerted misconduct' between Ford and a signatory to an agreement

-11-

containing a valid arbitration agreement." Accordingly, Ford may compel arbitration as a non-signatory to the agreement.

### III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's order denying Ford's motion to compel arbitration of Defendants' claims and REMAND for entry of an order staying the state court litigation against Ford and requiring the parties to submit their dispute against Ford to binding arbitration.

REVERSED and REMANDED.