## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
May 24, 2019

Lyle W. Cayce
Clerk

No. 17-20802

YPF S.A.; YPF EUROPE B.V.,

       Plaintiffs - Appellees

v.

APACHE OVERSEAS, INCORPORATED; APACHE INTERNATIONAL
FINANCE II S.A.R.L.,

       Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before HAYNES, HO, and DUNCAN, Circuit Judges.

JAMES C. HO, Circuit Judge:

When the parties to a contract agree to arbitrate, rather than litigate, certain disputes that might later unfold, Congress directs federal courts to honor the parties' wishes. Under the Federal Arbitration Act, courts generally enforce any resulting arbitration award, barring specific circumstances—such as when the arbitrator exceeds his legal authority or otherwise jeopardizes the fair arbitration process. *See* 9 U.S.C. § 10(a) (listing the conditions under which a court may vacate an arbitration award). No such circumstance exists here, so accordingly, we affirm.

No. 17-20802

I.

Apache Overseas, Inc. and Apache International Finance II S.A.R.L. (collectively, "Apache") agreed to sell certain assets to YPF S.A. and YPF Europe B.V. (collectively, "YPF").  Under the governing Sale and Purchase agreement ("SPA"), the parties agreed to accept adjustments to the sales price under certain conditions.

In the event of any dispute concerning those price adjustments, the parties agreed to arbitrate.  The SPA designated KPMG as the "Independent Accountant" that would reach a "Determination" as to the appropriate amount of adjustment to the sales price.  The SPA directed KPMG to "include the reasoning supporting the determination."  The SPA further provided that, "in the absence of agreement between the Parties," KPMG is "entitled to determine the procedure to be followed in undertaking the determination."

A subsequent Engagement Letter from KPMG specifies that "[t]he Determination will be a joint determination by Ginger Menown (Partner, KPMG LLP) and Diego Bleger (Partner, KPMG Sociedad Civil)."  Like the SPA, the Engagement Letter directs KPMG to "include the reasoning supporting the determination."

In addition, the Engagement Letter provides for a five-day period, during which either party may "call to the Independent Accountant's attention any patent arithmetical inaccuracy in the Determination."  Neither party may present substantive evidence or pleading during this five-day period.

Both YPF and Apache accepted the Engagement Letter, and no one disputes that the terms of the Engagement Letter form part of their arbitration agreement.

Pursuant to the terms of both the SPA and the Engagement Letter, Menown and Bleger subsequently issued a Determination and concluded that Apache owed YPF approximately $9.8 million.  Apache objected to the

No. 17-20802

Determination within the five-day period.  Apache complained that, because KPMG did not provide any details of its calculations, Apache was unable to determine whether there were a "patent arithmetical inaccuracy" in the Determination, as the Engagement Letter requires for either party to contest the Determination during the five-day review period.  In response, KPMG rejected Apache's objection, on the ground that its objection was not based on a patent arithmetic error.  Notably, however, the response letter was signed by KPMG partners Diego Bleger and Bryan Jones—not Ginger Menown.

Apache challenges the arbitration award on two grounds.  First, Apache objects to the manner in which KPMG conducted the five-day review process.  During that five-day period, one of the KPMG partners who had made the original Determination—Ginger Menown—departed KPMG, and KPMG substituted another partner in her place to complete the five-day review.  Apache challenges the validity of KPMG's substitution.  Second, Apache complains that, by explaining its methodological reasoning but failing to spell out its arithmetical calculations, KPMG violated the requirement that it provide its "reasoning" in the Determination.

We agree with the district court in rejecting both challenges and accordingly affirm the judgment confirming the arbitration award.

## II.

The Federal Arbitration Act ("FAA") governs the Engagement Letter.  Under the FAA, the court may vacate an arbitration award when "the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  An arbitrator exceeds his powers if he acts "contrary to express contractual provisions."  *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005) (citing *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989)).

3

No. 17-20802

"A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012) (citing *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). Furthermore, "[l]imitations on the arbitrators' scope of power must be clear and unambiguous or else they will be construed narrowly." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 343 (5th Cir. 2004).

Accordingly, "[j]udicial review of an arbitration award is extraordinarily narrow." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990). We review the district court's confirmation of an arbitrator's award *de novo*, but "our review of the arbitrator's award itself . . . is very deferential." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013) (citing *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994)). "The party defending against enforcement of the arbitral award bears the burden of proof." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) (citing *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976)).

A.

Apache first complains that the arbitration award must be set aside because the five-day review was not conducted by Menown and Bleger.

Because "[a]rbitration is a matter of contract," we must look to the text of the SPA and the Engagement Letter to determine whether KPMG was forbidden to conduct the five-day review period through partners other than Menown and Bleger. *Brook*, 294 F.3d at 672 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

In a footnote, the Engagement Letter provides that the "engagement and the Determination shall be made by Ms. Menown and Mr. Bleger." The

No. 17-20802

Engagement Letter never defines the term "engagement." Apache asks us to read the term "engagement" broadly to require Menown and Bleger to conduct not only the Determination, but also the five-day review.

Although we acknowledge that reasonable minds can differ, we ultimately conclude that the term "engagement" cannot bear the weight that Apache places on it, due to other language that the parties prominently featured in the Engagement Letter.

On the very first page of the Engagement Letter, the parties specify that "Menown and Bleger" shall conduct the "Determination." On the second page of the Engagement Letter, by contrast, the parties state only that "KPMG" shall conduct the five-day review—without specifying the names of any particular KPMG partners. If the parties wanted to allow only Menown and Bleger to conduct the five-day review, they presumably would have said so— just as they did with respect to the Determination.

We "resolve all doubts in favor of arbitration" when we evaluate "whether arbitrators exceeded their powers." *Rain CII Carbon*, 674 F.3d at 472. We conclude that Apache has not met its burden to show that KPMG exceeded its powers when it conducted the five-day review without Menown.

B.

Apache also complains that KPMG exceeded its powers because it did not provide sufficient reasoning to explain its Determination. Specifically, Apache contends that the agreement requires KPMG to provide not only its methodological reasoning, but also the specific arithmetic computations that support its Determination.

Both the SPA and the Engagement Letter require KPMG to include "reasoning supporting the determination." A "reasoned award" is "a somewhat ambiguous term left undefined by the FAA." *Cat Charter, LLC v.*

5

*Shurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011). Nor did the parties define the term here.

Though we have never given a specific definition, we have held that a "reasoned award" requires the arbitrators to submit "something short of findings and conclusions but more than a simple result." *Sarofim v. Trust Co. of the W.*, 440 F.3d 213, 215 n.1 (5th Cir. 2006) (quoting *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 780 (N.D. Ill. 2005)). The "findings and conclusions" standard is "a relatively exacting standard familiar to the federal courts." *Cat Charter*, 646 F.3d at 844. At the other end of the continuum is the "standard award," which is a "mere announcement of [the arbitrator's] decision." *Rain CII Carbon*, 674 F.3d at 474. "[C]ourts have generally been reluctant to vacate awards challenged on the grounds that their form was improper." *Id.* at 473 (citing *Cat Charter*, 646 F.3d at 842 n.12). All we need to decide is whether KPMG provided "greater [detail] than what is required in a 'standard award,'" that is, whether KPMG issued more than a mere announcement. *Cat Charter*, 646 F.3d at 845.

Although the Engagement Letter allows either YPF or Apache to bring an arithmetic error to KPMG's attention within five days of the Determination, nothing in either the SPA or the Engagement Letter requires KPMG to provide detailed mathematical calculations as part of the Determination itself. Nor can we justify reading an implied provision into the Engagement Letter that requires the mathematical detail sought by Apache today. *See, e.g.*, 23 WILLISTON ON CONTRACTS § 63:21 (4th ed. 2017) (noting that a court cannot introduce an implied term into a contract unless, under the circumstances, "it is absolutely necessary to introduce the term to effectuate the intention of the parties"). "Given the deference employed when evaluating arbitral awards," we conclude that the Engagement Letter requires KPMG to issue a reasoned

award, but not the heightened detail demanded by Apache. *Rain CII Carbon*, 674 F.3d at 474.

Applying a proper reading of the agreement, KPMG easily complies with the requirement to provide "reasoning supporting the determination." As KPMG explained, it used Argentine Generally Accepted Accounting Principles and performed the engagement pursuant to the Standards for Consulting Services, promulgated by the American Institute of Certified Public Accountants. KPMG also provided a chart listing the awarded amounts. Furthermore, KPMG discussed several bases for the award, noting that:

> [T]he Independent Accountant requested and obtained from Purchasers and analyzed accounting records for the composition of the Creditors balance as at the Locked Box Date and, through July 12, 2016, related payments made and outstanding amounts accrued by a Target Company. Based on our analysis, we find that the underlying accounting records confirm that Purchasers' Locked Box Working Capital Amount claims are in fact in excess of US$76,007,978.
>
> . . .
>
> The Independent Accountant has determined that Sellers did not accrue all liabilities related to operating expenses, administrative expenses, investments in fixed assets and contractual claims that existed as of the Locked Box Date.
>
> . . .
>
> We found that Purchasers provided documentation, including financial accounting and business records, sufficient to substantiate that $9,006,956 of the $10,139,032 claimed amounts have been paid or were still outstanding as at July 12, 2016, in excess of the corresponding amounts accrued in the Creditors line as at the Locked Box Date.
>
> . . .
>
> The Independent Accountant has determined that payments were made to, or for the benefit of the Sellers, after the Locked Box Date, constituting an adjustment for Leakage. We based our determination of the amounts awarded to Purchaser on our review

and analysis of documentation offered by Buyer to substantiate payments that satisfied the definition of Leakage.

. . .

Of the total $498,271 in Purchasers' Leakage claim, we found that $191,687 satisfied the definition and, therefore, we awarded that amount. We found that the remainder of the amount claimed was for either, "payments made in respect to the ordinary course of business" after the Lock Box Date or similar payments made prior to the Lock Box Date and not properly classified nor accrued and, therefore, not Leakage.

As we have held, an arbitrator issues a reasoned award when "the arbitrator laid out the facts, described the contentions of the parties, and decided which of the two proposals should prevail." *Rain CII Carbon*, 674 F.3d at 474. Here, KPMG noted that it based its analysis on the parties' statements and accounting records, pointed to its finding on the accrual of liabilities, and explained what documentation it found relevant in evaluating the proper refund amount. We find that KPMG issued a "reasoned award" here.

\* \* \*

We affirm the district court's confirmation of the arbitration award.