

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00374-CV

———————————————

PRECISION-HAYES INTERNATIONAL, INC., Appellant

V.

JDH PACIFIC, INC., Appellee

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-329266-21

Before Kerr, Bassel, Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

An arbitrator awarded Appellant Precision-Hayes International, Inc. (Precision) damages and attorney's fees in its licensing dispute with Appellee JDH Pacific, Inc. (JDH). After competing motions to vacate and confirm the arbitration award, the trial court vacated the award. Precision argues on appeal that the trial court erred because none of the grounds presented by JDH supported vacatur of the arbitration award, and therefore, the court should have confirmed the award. We will reverse the trial court's order vacating the arbitration award and render judgment confirming the arbitrator's award.

## I. BACKGROUND

Precision entered into license agreements with JDH in 2005 and 2012.[1] Precision granted JDH exclusive licenses to manufacture and sell cast metal anchor plates and castings bearing Precision's trademark. Both agreements contained an arbitration clause. The 2005 agreement provided:

> DISPUTE RESOLUTION/ARBITRATION – The parties hereto will attempt to amicably settle all disputes, controversies, or differences arising out of or in relation to the AGREEMENT by good faith negotiation. If such amicable settlement cannot be obtained, then any such dispute shall be submitted to binding arbitration in Dallas, Texas in accordance with the rules of the American Arbitration Association.

---

[1]The 2005 agreement was entered into by Precision Sure-Lock; the 2012 agreement was entered into by Hayes Specialty Machining. Precision succeeded to the rights of both by merger.

The 2012 agreement's arbitration clause was identical except for the addition of a final sentence: "Judgment may be entered on the award of the arbitrator in any court of competent jurisdiction." Only the 2012 agreement addressed attorney's fees:

> ATTORNEYS' FEES – In any arbitration or other legal action or proceeding brought to enforce any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees, in addition to its costs and expenses and any other available remedy.

Precision later learned that JDH was manufacturing and selling trademarked anchors that neither met the quality specifications required in the agreements nor carried the ® for Precision's mark. Accordingly, Precision terminated both agreements and filed suit against JDH in state court in Fort Bend County, Texas. JDH removed the action to federal court and sought to compel arbitration under the Federal Arbitration Act (the FAA). The federal court granted JDH's motion to compel all issues to arbitration—accepting JDH's invocation of the FAA—but denied JDH's request for its attorney's fees as a prevailing party under the 2012 agreement. Accordingly, the federal court dismissed Precision's claims with prejudice in its final judgment.[2]

JDH then filed an arbitration claim with the American Arbitration Association (the AAA), raising various contract and tort claims and requesting attorney's fees as the prevailing party under the 2012 agreement. JDH also sought declaratory

---

[2]The federal court dismissed each of Precision's claims after deciding that they were all subject to arbitration. *Precision-Hayes, Int'l, Inc. v. JDH Pac., Inc.*, CV H-19-1805, 2019 WL 5748889, at *4 (S.D. Tex. Nov. 5, 2019).

judgments aimed at invalidating Precision's patents and absolving JDH of alleged trademark and patent violations. The AAA appointed an arbitrator under its Commercial Arbitration Rules.

JDH then returned to the Fort Bend County court and filed, in the original cause, an application for a prejudgment writ of garnishment in the removed action. *See* Tex. R. Civ. P. 658. That court granted the writ against a bank to garnish Precision's funds in an amount equal to JDH's unreimbursed attorney's fees. The court later withdrew its order granting the writ, and JDH appealed this order.[3]

Meanwhile, Precision filed a counterclaim in the pending arbitration, alleging that JDH had wrongfully garnished Precision's funds by seeking (and briefly obtaining) the pretrial writ of garnishment in a court without jurisdiction. Precision also sought a declaration that it had rightfully terminated the agreements and sought its attorney's fees as a prevailing party under the 2012 agreement. JDH objected to the arbitrability of and the arbitrator's jurisdiction over Precision's counterclaims.

After a six-day final hearing, the arbitrator found that Precision had lawfully terminated the agreements and had successfully proven its wrongful garnishment claim. Precision was awarded $9,092.51 in damages and $498,094.52 in attorney's

---

[3]On June 29, 2021, the Fourteenth Court of Appeals dismissed JDH's appeal of the Fort Bend County court's withdrawal of its order granting a pretrial writ of garnishment because "the case ha[d] not been remanded to state court" after JDH removed it to federal court. *JDH Pac., Inc. v. Precision-Hayes Int'l, Inc.*, No. 14-21-00027-CV, 2021 WL 2656774, at *1 (Tex. App.—Houston [14th Dist.] June 29, 2021, pet. filed) (per curiam) (mem. op.).

fees. The arbitrator ruled against JDH on each of its claims. No transcript of the arbitration proceedings was created.

JDH then filed its motion to vacate the arbitration award, which was followed by Precision's motion to confirm the award. JDH argued that the award should be vacated because the arbitrator exceeded its authority when it considered Precision's wrongful garnishment claim, awarded Precision its attorney's fees, and failed to make a reasoned award. JDH filed an opposition to Precision's motion to confirm in which it argued that Precision's motion should be denied as "not ripe" due to defective service.

Each motion was set for a hearing on November 5, 2021, at which both parties appeared through their attorneys. The trial court granted JDH's motion to vacate the arbitrator's award without identifying the grounds relied upon and denied Precision's motion to confirm.

## II. STANDARD OF REVIEW AND RELEVANT LAW

### A. THE FAA APPLIES TO THIS DISPUTE

At the outset we must determine whether the FAA or Texas Arbitration Act (the TAA) governs this dispute because, although similar, the two arbitration schemes are not identical regarding the review of arbitration awards. *See* 9 U.S.C.A. §§ 1–16 (FAA); Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001–98 (TAA); *see also Black v. Shor*, 443 S.W.3d 154, 162 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied). Though the parties before the trial court and on appeal have interchangeably invoked

both the FAA and TAA, it is undisputed that the arbitration proceeded under the FAA after the federal court granted JDH's motion to compel an FAA arbitration. *See Precision-Hayes*, 2019 WL 5748889, at *1. Thus, we will apply the FAA substantively while being mindful that the TAA applies to matters of procedure. *See Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) ("When a party asserts a right to arbitration under the Federal Arbitration Act, the question of whether a dispute is subject to arbitration is determined under federal law."); *see also Miller v. Walker*, 582 S.W.3d 300, 304 (Tex. App.—Fort Worth 2018, no pet.) (applying the FAA where the arbitration petition was filed under the FAA and no dispute otherwise existed as to its application); *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 394–95 (Tex. App.—Dallas 2009, pet. denied) (orig. proceeding).

## B. DE NOVO REVIEW

We review de novo a trial court's decision to vacate an arbitration award under the FAA. *Miller*, 582 S.W.3d at 304. Our review is "exceedingly deferential" to the arbitrator's decision. *Id.* Courts may vacate an arbitration award "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568, 133 S. Ct. 2064, 2068 (2013) (internal quotations omitted).

## C. VACATUR FOR EXCEEDING AUTHORITY

An arbitration award must be confirmed unless it is vacated, modified, or corrected pursuant to one of the limited grounds set forth in the FAA. *See* 9 U.S.C.A. §§ 9, 10. Vacatur is available if an arbitrator "exceeded their powers." *Id.* § 10(a)(4).

6

An arbitrator exceeds its powers if it acts "contrary to an express contractual provisions" which does not occur unless the arbitrator has "utterly contorted . . . the essence of the contract." *Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 375 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1395 (2021) (internal quotations omitted).

Thus, to decide if an arbitrator exceeded its powers, we must determine only whether the arbitration clause gave the arbitrator authority to reach a certain issue, "not whether the arbitrator correctly decided the issue." *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.); *see DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997). Accordingly, a reviewing court may not substitute its judgment for that of the arbitrator merely because it would have reached a different result. *Mauldin v. MBNA Am. Bank, N.A.*, No. 2-07-208-CV, 2008 WL 4779614, at *2 (Tex. App.—Fort Worth Oct. 30, 2008, no pet.); *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 827 (5th Cir. 2013). When reviewing whether an arbitrator exceeded its powers, we must resolve all doubts in favor of the arbitration and none against it. *Vantage Deepwater Co.*, 966 F.3d at 375; *see Mauldin*, 2008 WL 4779614, at *2.

## III. DISCUSSION

The only grounds for vacatur argued by JDH were that the arbitrator exceeded its powers in three ways: (1) by deciding Precision's wrongful garnishment claim because that claim was outside the scope of the arbitration clauses, (2) by awarding an unreasonable amount of attorney's fees to Precision, and (3) by failing to issue a

7

reasoned award.[4]  On appeal, Precision argues that the trial court erred because none of the three grounds presented by JDH supported vacatur of the arbitration award. Accordingly, Precision argues, the court further erred in failing to confirm the arbitration award.  We agree with Precision.

## A.  THE ARBITRATOR DID NOT EXCEED ITS POWERS BY DECIDING THE WRONGFUL GARNISHMENT CLAIM

With its first ground, JDH contended that the arbitrator exceeded its powers when it decided Precision's wrongful garnishment claim because it was outside the scope of the arbitration clauses.[5]  JDH argued that this was true under three legal theories: (1) that the clauses limited arbitration to only breach of contract claims,

---

[4]JDH also contended that vacatur was appropriate because Precision failed to properly serve JDH with its motion to confirm.  However, we overrule any argument related to defective service because JDH undisputedly entered a general appearance by failing to file a special appearance, responding to Precision's motion, and then appearing at the hearing held on *both* motions.  *See* Tex. R. Civ. P. 120a(1); *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 224 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (instructing that a party that does not comply with Rule 120a waives its jurisdictional challenge and enters a general appearance).  And the trial court apparently agreed, as it would have had no authority to enter its final order without having determined that it had personal jurisdiction over both parties.  *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010) ("To render a binding judgment, a court must have both subject matter jurisdiction and personal jurisdiction over the parties.").

[5]Within this argument, JDH also raised a question as to whether the arbitration clauses gave the arbitrator power to determine threshold issues of the arbitrability of particular claims.  However, because we hold that Precision's wrongful garnishment claim was within the scope of claims to be decided by the arbitrator under the broad clauses, we need not decide the question of arbitrability.  *See* Tex. R. App. P. 47.1. JDH's attorney conceded this point at oral argument before this court.

(2) that the wrongful garnishment claim was a "stand-alone grievance" because Precision did not refer to the license agreements in raising the claim, and (3) that the wrongful garnishment claim was a "post-termination dispute."

## 1. The Arbitration Clauses Are Expansive

The arbitration clauses here required the parties to arbitrate "all disputes, controversies, or differences arising out of or in relation to this [license agreements]."

The United States Supreme Court, the Fifth Circuit, and Texas courts all agree that arbitration clauses that use similar "arising out of" and "related to" language that are broad and "capable of expansive reach." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067-68 (5th Cir. 1998); *see Prima Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397–98, 87 S. Ct. 1801, 1802–03 (1967) (labelling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898–99 (Tex. App.—Austin 2006, no pet.) (similar). An arbitration clause that covers all disputes "related to" an agreement "is not limited to claims that literally arise under the contract." *Ford Motor Co. v. Ables*, 207 Fed. Appx. 443, 447 (5th Cir. 2006) (internal quotations omitted). Instead, such broad arbitration clauses require only that the dispute merely "touch" upon matters covered by the agreement to be arbitrable. *Id.* To determine whether a claim falls within the scope of matters covered in an arbitration clause, we are to "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *Prudential Secs. Inc.*, 909 S.W.2d at 900.

**2. The Wrongful Garnishment Claim is Within the Scope of These Clauses**

JDH first argued that the scope of the arbitration clauses covered only breach of contract claims. However, the clauses are exceedingly broad and required that the parties send to arbitration "all disputes, controversies, or differences arising out of or in relation to the [Agreements]." In light of this broad language, we must look to the allegations within Precision's original counterclaim to determine if its wrongful garnishment claim "touched" upon the license agreements in some way. *See Ford Motor Co.*, 207 Fed. Appx. at 447. We conclude that it did.

In its counterclaim, Precision alleged that JDH obtained multiple writs of garnishment from the Fort Bend County district court that froze $200,000 in Precision's operating account. It also alleged that JDH believed itself the "prevailing party" under the 2012 agreement after the federal court dismissed Precision's initial lawsuit and compelled the dispute to arbitration.[6] Finally, according to Precision's counterclaim, even after the state court dissolved the garnishment orders, JDH "continued to take deliberate actions" to wrongfully garnish Precision's funds which damaged Precision and caused it to incur attorney's fees in its defense.

These allegations establish that the wrongful garnishment claim clearly touched upon the 2012 agreement; in fact, the claim existed only because of the 2012

---

[6]JDH sought and obtained the ex parte writ of garnishment in Fort Bend County only after the federal court denied its request for attorney's fees under the same theory.

agreement. JDH obtained the garnishment under the theory that the 2012 agreement entitled it to attorney's fees. In other words, JDH's garnishment arose directly out of that agreement. It follows that Precision's wrongful garnishment claim, as a direct objection to that garnishment, was a "dispute, controversy, or difference[]" that related to or, at a minimum, touched upon the 2012 agreement. Therefore, Precision's claim was within the scope of the arbitration clause.

Citing *Valero Energy Corp. v. Teco Pipeline Co.*, JDH contended that Precision's wrongful garnishment claim was outside the scope of the arbitration clauses because, on its face, the claim did not specifically reference the two license agreements. 2 S.W.3d 576, 589–90 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that a tort claim falls within an arbitration clause if the claim, as alleged in the petition, "is so interwoven with the contract that it could not stand alone" rather than being available "without reference to the contract") (internal quotations omitted). Thus, says JDH, the wrongful garnishment claim was a "stand-alone grievance" that could be maintained without reference to the agreements—which took it outside the scope of the arbitration clauses.

This argument is misleading. Precision's original counterclaim first pleaded a set of background facts, which included a detailed account of the garnishment proceedings with a specific reference to the 2012 agreement. After these facts, Precision presented its claims, including one for wrongful garnishment. Though there is technically no mention of the license agreements within the boundaries of its

11

wrongful garnishment claim, Precision specifically incorporated all of its background facts therein. Thus, on its face, Precision's claim invoked the 2012 agreement and did not constitute a "stand-alone grievance" that was maintained without reference to the license agreements.

Finally, JDH argued that the wrongful garnishment claim was outside the arbitration clauses' scope because it arose after termination of the license agreements, thus precluding it from arbitration as announced by the Supreme Court in *Litton*. *See Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 205–06, 111 S. Ct. 2215. 2224 (1991). In *Litton*, a labor union sought to arbitrate grievances against an employer pursuant to a collective bargaining agreement after a group of union employees was laid off in a manner that allegedly violated the order of layoffs as required in the agreement. *Id.* at 193, 209–10. The layoffs, however, occurred "well after" the expiration of the agreement and before a new agreement had been struck. *Id.* The arbitration clause from the expired agreement mandated arbitration for "[d]ifferences that may arise . . . regarding [the agreement] and any alleged violations" thereof. *Id.* at 194.

After placing the dispute into its particular context within the National Labor Relations Act and related precedent, the Supreme Court explained that grievances over terms and conditions of employment that arise after the expiration of a collective bargaining agreement remain arbitrable only if the dispute has its "real source in the contract." *Id.* at 205. It expounded that a

> postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id.* at 205–06.

The Court then held that the employee grievances did not arise from the contract because the "order of layoffs" provision required consideration of factors like aptitude and ability that are fluid and change over time. *Id.* at 210. Therefore, the Court concluded that it was unable to "infer an intent on the part of the contracting parties to freeze any particular order of layoff or vest any contractual right as of the Agreement's expiration"; thus, the grievances were not subject to the arbitration clause. *Id.*

*Litton* is not particularly instructive for our case. It was decided within the insular and statutory-based realm of federal labor-relation jurisprudence and involved issues related to an *expired* collective bargaining agreement rather than *terminated* license agreements, as we have here. And, although the Court held that the layoffs did not fall under what it deemed the "broad" arbitration clause from the collective bargaining agreement, *id.* at 193, that clause's breadth is eclipsed by the expansive clauses in the license agreements before us. For reasons already explained, Precision's wrongful garnishment claim fell squarely within the scope of these arbitration clauses

13

because it touched upon and arose directly out of the attorney's fee provision from the 2012 agreement.

Finally, the mere fact that the events related to the wrongful garnishment occurred after the licenses were terminated does not, as JDH contends, preclude arbitration of Precision's wrongful garnishment claim under *Litton*. To the contrary, the *Litton* Court explicitly agreed that a dispute arising after expiration of a collective-bargaining contract could still be compelled to arbitration so long as it "clearly arises under the contract." *Id.* at 204 (quoting *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 249, 97 S. Ct. 1067, 1071 (1977)). Again, that is exactly the situation we have here.

For these reasons, we hold that the arbitrator did not exceed its powers in deciding the wrongful garnishment claim and, therefore, that this ground did not support vacatur of the arbitrator's award.

## B. ATTORNEY'S FEES

JDH further contended that the arbitrator exceeded its powers by awarding to Precision an unreasonable amount of attorney's fees. It conceded that the arbitrator had the power to award *reasonable* attorney's fees but argued that the arbitrator had no power to award an *unreasonable* amount. According to JDH, the award of fees to Precision—which totaled "more than 55 times [the] awarded damages"—was

excessive and, therefore, "*per se* unreasonable."[7]  This argument fails for at least two reasons.

First, JDH's argument is not whether the arbitrator had the power to award attorney's fees, only that the arbitrator set the award incorrectly.  Because there is no dispute as to whether the parties contracted to give the arbitrator the power to award attorney's fees, JDH cannot now seek judicial review of the specific amount awarded. *See Oxford Health Plans LLC*, 569 U.S. at 569, 133 S. Ct. at 2068 ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.") (internal quotations omitted). The arbitrator's award cannot be vacated on the grounds that it was decided incorrectly or contained errors in interpretation or application of the law to facts.  *See Ancor Holdings, LLC*, 294 S.W.3d at 829–30.

Additionally, there is not a full record or transcript of the arbitration proceedings in this case.  In the absence of a complete record and transcript of the arbitration proceedings, we cannot determine the basis of the attorney's-fees award. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101–02 (Tex. 2011); *Statewide Remodeling*

---

[7]Relatedly, JDH also argued that the arbitrator's award of attorney's fees—as those fees pertained to the wrongful garnishment claim—supported vacatur because deciding that claim was outside the arbitrator's powers.  Having held that it was within the arbitrator's powers to decide the wrongful garnishment claim, we overrule this argument.

*v. Williams*, 244 S.W.3d 564, 569–70 (Tex. App.—Dallas 2008, no pet.). Without such a record, a reviewing court is to presume that the award was correct. *Nafta Traders, Inc.*, 339 S.W.3d at 101–02; *Statewide Remodeling*, 244 S.W.3d at 569–570. JDH, in seeking to vacate the arbitrator's decision, bore the burden of supplying a complete record to establish its grounds for vacatur. *See Statewide Remodeling*, 244 S.W.3d at 569–70. Because JDH failed to meet this burden, we must presume that the award of attorney's fees was reasonable. *See Nafta Traders, Inc.*, 339 S.W.3d at 101–02.

For these reasons, we hold that any argument that the award of attorney's fees was unreasonable could not support vacatur of the arbitrator's award.

## C. REASONED AWARD

Finally, JDH argued for vacatur on the ground that the arbitrator failed to issue a reasoned award—as requested by the parties—because the award did not (1) address JDH's contention that JDH did not make false statements to obtain its writ of garnishment or (2) provide any rationale for denying JDH's request for declaratory relief. We hold that the arbitrator issued a reasoned award.

To qualify as a "reasoned award," the arbitrator must submit a decision that is less than findings and conclusions but more than a standard award. *YPF S.A. v. Apache Overseas, Inc.*, 924 F.3d 815, 820 (5th Cir. 2019); *see Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 858–59 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Both the "standard award" and "findings and conclusions" standards are well-known to courts. *YPF S.A.*, 924 F.3d at 820. A standard award is one that offers no explanation and

16

merely announces a decision. *Id.* Findings and conclusions are much more exacting, requiring extensive explanation. *Id.*; *see Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011). Accordingly, an arbitrator's award is reasoned if it provides greater detail than found in a standard award—that is, more than a mere announcement of the decision. *YPF S.A.*, 924 F.3d at 820.

The arbitrator's final award is a five-page document that includes an approximately two-page section titled "CONCLUSIONS AND REASONING." As to the particular claims, the award provides that

> [] A threshold and pivotal question is whether the 2005 Agreement and the 2012 Agreement could be terminated in a lawful manner. Yes, by the express terms both agreements, the 2005 Agreement and 2012 Agreement, could be and were lawfully terminated by [Precision].
>
> [] [JDH] did not carry it[]s burden of proof on its claims of breach by [Precision] of the 2005 Agreement and the 2012 Agreement. [JDH] is further estopped because it accepted the benefits to it under the 2005 Agreement and the 2012 Agreement.
>
> [] [JDH] did not carry it[]s burden of proof on any remaining claims of tortious interference and unfair competition.
>
> [] [JDH] did not carry it[]s burden of proof on Counts 6, 7, 8, 9, 10 and 11, which seek declaratory relief. The claims are not ripe or justiciable in the final hearing and [JDH] simply did not prove it[]s case (or defeat [Precision]'s defenses) on the requested declaratory relief. No declaratory judgment relief is granted to [JDH] against [Precision].
>
> [] [Precision] did carry it[]s burden of proof for a claim of wrongful garnishment by [JDH] against [Precision]. [Precision] is awarded damages as outlined below for a wrongful garnishment.

17

The award then outlines the parties' claims for attorney's fees, pointing to the attorney's fee provision in the 2012 agreement and also discussing the various legal bases upon which their claims could rest. The award then concludes that "[Precision] mainly succeeds and prevails on its claims and defenses and [JDH] does not," and it awarded Precision its attorney's fees. Finally, as to damages, the award declares that "[Precision] proved its wrongful garnishment claim[,] [that] the wrongful garnishment caused [Precision] damages," and that "[JDH] does not recover on it[]s claims against [Precision]."

We conclude that this award provided more detail than a mere announcement. *YPF S.A.*, 924 F.3d at 820. This becomes apparent if we juxtapose the award against the trial court's vacatur order, which constitutes an award of the simple, standard variety:

> On this day, the Court considered [JDH]'s Petition/Motion/Application to Vacate the [arbitrator's final award]. After considering the pleadings, the Motion, and arguments of the Parties, the Court is of the opinion that the Motion should be and hereby is GRANTED.
>
> THEREFORE, it is hereby ORDERED and DECREED that [Precision]'s Motion to Confirm Arbitration is DENIED.

Accordingly, we hold that vacatur was not supported on the ground that the arbitrator failed to enter a reasoned award.

18

## IV. CONCLUSION

Having concluded that JDH failed to present any grounds that support vacatur of the arbitrator's award, we reverse the trial court's order vacating the arbitrator's award and render judgment confirming the award.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  August 31, 2022

19